# Illinois Official Reports

## Appellate Court

---

### *Zander v. Carlson*, 2019 IL App (1st) 181868

---

| | |
|---|---|
| Appellate Court Caption | RUSSELL ZANDER, Plaintiff-Appellant, v. ROY CARLSON and THE ILLINOIS FRATERNAL ORDER OF POLICE LABOR COUNCIL, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>No. 1-18-1868 |
| Filed<br>Rehearing denied | November 21, 2019<br>December 18, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-L-63098; the Hon. Martin S. Agran, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas W. Gooch III and Sabina D. Walczyk, of The Gooch Firm, of Wauconda, for appellant.<br><br>Brendan J. Nelligan and Matthew J. Egan, of Pretzel & Stouffer, Chtrd., of Chicago, for appellees. |

Panel                          JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
                               Presiding Justice Gordon and Justice Burke concurred in the judgment and opinion.


## OPINION

¶ 1         When the Village of Fox Lake (Village) sought to terminate Russell Zander's employment as a police officer, Zander waived his right to a hearing before the local police board and opted instead to challenge his dismissal through the arbitration process outlined in the collective bargaining agreement between the Village and his union, the Illinois Fraternal Order of Police Labor Council (FOP). He pursued this course on the advice of Roy Carlson, an FOP staff attorney who later represented him at the arbitration hearing. After the arbitrator ruled against him, Zander sued Carlson and the FOP for legal malpractice. In dismissing the complaint, the circuit court held that Carlson was immune from personal liability for actions taken on behalf of a union in the collective bargaining process and that Zander's claim against the FOP must be brought before the Illinois Labor Relations Board, which has exclusive jurisdiction over claims that a union has violated its duty to fairly represent its members. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3         We draw the following facts from Zander's complaint. In December 2014, the Village's police chief placed Zander on administrative leave based on allegations of misconduct. Sometime thereafter, the police chief filed formal charges recommending Zander's termination. In response to Zander's request for legal representation, the FOP assigned Carlson to represent him. Carlson is a licensed attorney and FOP employee who represents FOP members in grievance and termination proceedings. Zander did not pay Carlson (other than indirectly through his union dues), and the two did not sign a retainer agreement. According to Zander, the FOP forced him to accept Carlson's representation and gave him no input in the selection. Zander alleges that he formed an attorney-client relationship with Carlson through acquiescence.

¶ 4         Under the Illinois Municipal Code, a police officer facing discharge is entitled to a hearing before the local Board of Fire and Police Commissioners (police board), unless a collective bargaining agreement between the municipality and the officer's union provides for arbitration of such disputes. See 65 ILCS 5/10-2.1-17 (West 2018). The collective bargaining agreement between the Village and the FOP provides that an officer may elect to challenge his discharge either before the police board or through the agreement's ordinary grievance-arbitration procedure. On Carlson's advice, Zander elected to proceed via arbitration. After a two-day hearing, the arbitrator upheld the decision to terminate Zander's employment.

¶ 5         Zander then filed a two-count complaint against Carlson and the FOP. Count I alleged that Carlson owed Zander a duty of care arising from their attorney-client relationship and that Carlson breached that duty by negligently advising Zander to waive his right to a hearing before the police board and by inadequately representing him at the arbitration hearing. Count II alleged that the FOP assumed its own duty of care to Zander by providing him with legal

representation and that it breached that duty by assigning him an inexperienced and incompetent lawyer. Alternatively, count II alleged that the FOP was vicariously liable for Carlson's negligence.

¶ 6        Carlson and the FOP moved to dismiss the complaint. Citing *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), they argued that Zander's claim against Carlson should be dismissed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) because a union agent is immune from personal liability for actions taken on the union's behalf in the collective bargaining process. And they argued that Zander's claim against the FOP should be dismissed under section 2-619(a)(1) of the Code (*id.* § 2-619(a)(1)) because the Illinois Labor Relations Board (Board) has exclusive jurisdiction over claims that a union violated its duty to fairly represent its members.

¶ 7        In response, Zander argued that Carlson was not entitled to immunity under *Atkinson* because the arbitration proceeding challenging his termination was unrelated to the collective bargaining process and because Carlson acted on his (rather than the union's) behalf due to their attorney-client relationship. Zander argued, alternatively, that he should be able to sue Carlson for malpractice as a third-party beneficiary of the FOP's attorney-client relationship with Carlson. Finally, Zander argued that his claim against the FOP did not fall within the Board's exclusive jurisdiction because it was not based on the duty of fair representation but instead sought to hold the FOP vicariously liable for Carlson's malpractice.

¶ 8        The circuit court dismissed the complaint, holding that Carlson was immune from suit under *Atkinson* and that Zander's claim against the FOP fell within the Board's exclusive jurisdiction. In a motion to reconsider, Zander argued that Carlson should be subject to liability to the extent of his malpractice insurance coverage. The circuit court denied the motion, finding that Zander's new argument was forfeited. Zander then filed a timely notice of appeal.

¶ 9                                      II. ANALYSIS

¶ 10        We review the dismissal of a complaint under sections 2-615 and 2-619 of the Code *de novo*. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 23; *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 41. A motion to dismiss under section 2-615 challenges the legal sufficiency of a complaint. *Bogenberger*, 2018 IL 120951, ¶ 23. The question is whether the complaint's allegations, if proved, would entitle the plaintiff to relief. *Id.* In making this determination, we must accept the complaint's well-pleaded allegations as true. *Id.* "The critical inquiry is whether the allegations of the complaint, when construed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Id.* A motion to dismiss under section 2-619, on the other hand, "admits the legal sufficiency of the plaintiff's complaint but asserts a defense defeating the claim." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 14. Under section 2-619(a)(1), a complaint should be dismissed if "the court does not have jurisdiction of the subject matter of the action." 735 ILCS 5/2-619(a)(1) (West 2018). When considering a motion to dismiss under section 2-619, we again must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *American Family Mutual Insurance Co. v. Krop*, 2018 IL 122556, ¶ 13; *Shirley v. Harmon*, 405 Ill. App. 3d 86, 90 (2010).

¶ 11        With those standards in mind, we turn to Zander's legal malpractice claim against Carlson. In *Atkinson*, the United States Supreme Court held that, under the Taft-Hartley Act (29 U.S.C. § 185), which amended the National Labor Relations Act (NLRA) (29 U.S.C. § 151 *et seq.*), a

union's agents may not be held individually liable for actions taken on the union's behalf in the collective bargaining process. 370 U.S. at 245-49. That rule rests on the "view that only the union [should] be made to respond for union wrongs, and that the union members were not to be subject to levy." *Id.* at 247-48. "This policy cannot be evaded or truncated by the simple device of suing union agents or members, whether in contract or tort, *** for violation of a collective bargaining contract for which *** the union itself is liable." *Id.* at 249. Rather, "national labor policy" demands that "when a union is liable for damages for violation of [a collective bargaining agreement], its officers and members are not liable for these damages." *Id.* Following *Atkinson*, courts have repeatedly "cited *Atkinson* to foreclose state-law claims, however inventively cloaked, against individuals acting as union representatives within the ambit of the collective bargaining process." *Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989). "This principle has become so embedded in [NLRA] jurisprudence that it brooks no serious challenge." *Id.*

¶ 12    As noted above, *Atkinson* interpreted the NLRA, which governs labor relations in the private sector. The first question we must address is whether *Atkinson* immunity applies under the Illinois Public Labor Relations Act (Labor Relations Act), which "regulates labor relations between public employers and employees." 5 ILCS 315/2 (West 2018). We hold that it does. "[T]he legislative history of the [Labor Relations Act] indicates a close parallel between the Illinois act and the National Labor Relations Act ***." *Rockford Township Highway Department v. Illinois State Labor Relations Board*, 153 Ill. App. 3d 863, 874-75 (1987). For that reason, Illinois courts regularly look to federal precedent interpreting the NLRA for guidance in construing the Labor Relations Act. See *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 339 (1997); *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 737 (2001). Courts in other jurisdictions, moreover, have construed both federal and state public labor relations laws to provide *Atkinson* immunity. See *Montplaisir*, 875 F.2d at 4-5; *Weiner v. Beatty*, 116 P.3d 829, 832-33 (Nev. 2005); *Brown v. Maine State Employees Ass'n*, 690 A.2d 956, 958 n.1 (Me. 1997); *Best v. Rome*, 858 F. Supp. 271, 275 (D. Mass. 1994).

¶ 13    We find that the structure of the Labor Relations Act supports the application of *Atkinson* immunity to agents and officers of public sector unions. Under the Labor Relations Act, a union owes its members a "duty of fair representation" arising from the union's "statutory role as exclusive bargaining agent" for its members. *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 163 (1998). The Labor Relations Act vests the Board with exclusive jurisdiction over claims that a union has violated its duty of fair representation. *Id.*; see also *Foley v. American Federation of State, County & Municipal Employees*, 199 Ill. App. 3d 6, 8-10 (1990). And it requires a union member to establish "intentional misconduct" by the union to prevail on such a claim. 5 ILCS 315/10(b)(1) (West 2018); see *Knox v. Chicago Transit Authority*, 2018 IL 162265, ¶ 32 ("A union violates its duty of fair representation only where it commits intentional misconduct in representing an employee."). This "comprehensive scheme of remedies and administrative procedures" (*Foley*, 199 Ill. App. 3d at 10) would be undermined by a rule that allowed union members to circumvent the Board's exclusive jurisdiction and avoid the Labor Relations Act's intentional misconduct standard by relabeling duty of fair representation claims as negligence actions against a union's agents or officers. Thus, "[t]o preserve the integrity of [the Labor Relations Act's] statutory scheme, the *Atkinson* rule must fully apply in the public sector." *Montplaisir*, 875 F.2d at 5.

¶ 14        Zander appears to accept that *Atkinson* immunity applies under the Labor Relations Act, but he argues that such immunity should not extend to a union's lawyers. We disagree. In *Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir. 1985), the Ninth Circuit refused to create "an exception to the *Atkinson* rule *** for union employees who happen to be attorneys." The court recognized that "[l]abor grievances and arbitrations frequently are handled by union employees or representatives who have not received any professional legal training at all." *Id.* at 1258. When a union instead hires an attorney "to act for it in the collective bargaining process"—including in an "arbitration proceeding" where "the underlying grievance belongs to a particular union member"—the union itself continues to "represent[,] and is ultimately responsible to[,] the member." *Id.* In those circumstances, the court held, "the rationale behind the *Atkinson* rule is squarely applicable." *Id.*

¶ 15        As *Peterson* explained, sound policy reasons support the extension of *Atkinson* immunity to attorneys who act on behalf of a union in matters arising under a collective bargaining agreement or that otherwise relate to the collective bargaining process. As we noted above, a union may be held liable to a member for breaching its duty of fair representation "only where it commits intentional misconduct in representing an employee." *Knox*, 2018 IL 162265, ¶ 32. In a legal malpractice action, by contrast, an attorney may be held liable for merely negligent conduct. *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 25. Allowing union members to file malpractice suits against union attorneys for actions taken in connection with the collective bargaining process would "anomalous[ly]" hold "certain agents or employees of the union *** to a far higher standard of care than the union itself." *Peterson*, 771 F.2d at 1259. Worse yet, because duty of fair representation claims are subject to a six-month statute of limitations (see 5 ILCS 315/11(a) (West 2008)), while legal malpractice actions are subject to a lengthier two-year statute of limitations (see 735 ILCS 5/13-214.3(b) (West 2018)), failing to extend *Atkinson* immunity to union attorneys would subject them to personal liability for actions taken on behalf of a union well after the limitations period for a claim against the union itself had expired. See *Peterson*, 771 F.2d at 1259 (observing that, under such a rule, "the union attorney would often be the only defendant against whom a disappointed [union member] could proceed").

¶ 16        For these reasons, courts have consistently followed *Peterson* in "reject[ing] efforts to distinguish lawyers from other union agents for purposes of *Atkinson* immunity" (*Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 862 (10th Cir. 1996)) and "have uniformly concluded that *Atkinson* prohibits claims made by a union member against attorneys employed by or retained by the union to represent the member in a labor dispute." *Carino v. Stefan*, 376 F.3d 156, 160 (3d Cir. 2004).

¶ 17        Zander argues that *Atkinson* and *Peterson* do not support the dismissal of his malpractice claim under section 2-615 because his complaint alleged a direct attorney-client relationship between him and Carlson. While we must accept the well-pleaded allegations of Zander's complaint as true when assessing its legal sufficiency, we are not required to accept "mere conclusions of law or fact unsupported by specific factual allegations." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 408 (1996). Zander's complaint alleged that Carlson was an FOP employee who regularly represented police officers in labor disputes, grievances, and termination proceedings. He alleged that, by acquiescing in Carlson's representation of him, he formed an attorney-client relationship with Carlson. But he conceded that he and Carlson did not sign a retainer agreement; that he had no input into the FOP's decision to assign Carlson

- 5 -

to represent him; and that he did not pay for Carlson's services, other than indirectly through his union dues. Zander's contention that his mere acceptance of Carlson's representation created an attorney-client relationship is foreclosed by *Peterson*, which rejected the notion that "an attorney who is handling a labor grievance on behalf of a union as part of the collective bargaining process has entered into an 'attorney-client' relationship in the ordinary sense with the particular union member who is asserting the underlying grievance." 771 F.2d at 1258.

¶ 18     *Peterson* recognized that "union members who have themselves retained counsel to process grievances on their behalf" are not prohibited from bringing malpractice suits against their retained attorneys, even if the attorney otherwise "serves as the union's regular outside counsel and is employed at the union's suggestion." *Id.* at 1259. But to invoke this exception, the union member must show that the attorney "specifically agreed *** to provide direct representation to [the union member] as an individual client" and was not merely "acting pursuant to [his] obligation to provide representation for or on behalf of the union." *Id.* at 1261. Notably, Zander's complaint did not allege any specific agreement by Carlson to directly represent Zander as an individual client. To the contrary, Zander alleged that Carlson was an FOP employee whose duties included regularly representing union members in grievance and termination proceedings and whose services were provided to Zander (and other union members) as a benefit of union membership. Even viewing the allegations in Zander's complaint in the light most favorable to him, he failed to sufficiently allege an attorney-client relationship between him and Carlson. See *Arnold*, 100 F.3d at 862-83 (rejecting union member's attempt to "recharacterize" his relationship with union attorney where the attorney was "retained by the union," the attorney's services were "provided to [the union member] as a benefit of [his] union membership," and the attorney "also provided services on behalf of [the union] to *** other [union members] threatened with termination").

¶ 19     Zander makes several other attempts to avoid the application of *Atkinson* immunity, but none is persuasive. He contends that the arbitration proceeding challenging his termination was not related to the collective bargaining process. But Zander's right to challenge his termination through arbitration was created and governed by the collective bargaining agreement. Under the agreement, Zander had the option to waive his right to a hearing before the police board and instead challenge his termination through the arbitration procedures applicable to other types of grievances. Whether it related to an ordinary grievance or a termination decision, the arbitration proceeding clearly was "part of the collective bargaining process." *Breda v. Scott*, 1 F.3d 908, 909 (9th Cir. 1993) (applying *Atkinson* immunity to outside counsel hired by union to represent member at arbitration hearing challenging his discharge).

¶ 20     Zander also argues that, even in the absence of a direct attorney-client relationship, he should be permitted to sue Carlson for malpractice as a third-party beneficiary of the FOP's attorney-client relationship with Carlson. It is true that an attorney may owe a duty of care to a nonclient who "is an intended third-party beneficiary of the relationship between the client and the attorney," where the attorney acts "at the direction of or on behalf of the client to benefit or influence [the] third party." *In re Estate of Powell*, 2014 IL 115997, ¶ 14. But applying the third-party beneficiary doctrine to overcome a union attorney's *Atkinson* immunity would undermine the policy reasons that support such immunity in the first place. Contrary to the basic principle underlying *Atkinson* immunity, employing the third-party beneficiary doctrine in this manner would shift liability arising from a union's representation of its members from the union itself to the union's agents. And, as discussed above, it would

upset the Labor Relations Act's statutory scheme governing a union's duty of fair representation by replacing the statute's intentional misconduct standard (and six-month statute of limitations) with the general negligence standard (and two-year statute of limitations) applicable to malpractice actions. For these reasons, the third-party beneficiary doctrine cannot be used to "remove the *Atkinson* bar." *Carino*, 376 F.3d at 162.

¶ 21 Zander contends that extending *Atkinson* immunity to union attorneys will insulate such attorneys from the harm that their misconduct might cause to union members and free them from complying with the rules of professional conduct. This concern is unfounded. The union itself retains the right "to sue its attorney for malpractice or for breach of contract, and to compensate a union member out of the recovery for any damages he may have suffered." *Peterson*, 771 F.2d at 1259. And nothing in our decision should be read to suggest that union attorneys may not face discipline for violating rules of professional conduct. See *id.* at 1258 (recognizing that a union attorney may have "certain ethical obligations" to a union member whom he represents in a grievance proceeding, even if "his principal client is the union").

¶ 22 Zander argues that he should be permitted to recover damages from Carlson up to the limits of any malpractice insurance coverage that Carlson may have. But Zander forfeited this argument by raising it for the first time in his motion to reconsider. See *Caywood v. Gossett*, 382 Ill. App. 3d 124, 133 (2008) ("arguments raised for the first time in a motion for reconsideration in the circuit court are waived on appeal"). In any event, the argument is merely another effort to shift liability for an alleged breach of a union's duty of fair representation away from the union itself and thus cannot be squared with the Labor Relations Act's comprehensive statutory scheme governing such claims or with the basic principle that "the union as an entity *** should *** be the sole source of recovery for injury inflicted by it." *Atkinson*, 370 U.S. at 249. Neither the Labor Relations Act nor *Atkinson* can "be evaded or truncated by the simple device of suing union agents" personally, whether or not the union agent is an attorney who carries malpractice insurance. *Id.* For all of these reasons, the circuit court correctly dismissed Zander's legal malpractice claim against Carlson.

¶ 23 That brings us to Zander's claim against the FOP. As discussed above, the Labor Relations Act imposes on public sector unions a duty to fairly represent their members and makes the breach of that duty an unfair labor practice. See *Foley*, 199 Ill. App. 3d at 8-10. The Labor Relations Act vests the Board with exclusive jurisdiction over unfair labor practice charges, including claims that a union has breached its duty of fair representation. *Id.* at 10-12. In addition, the Labor Relations Act creates a six-month statute of limitations for unfair labor practice charges (see 5 ILCS 315/11(a) (West 2018)) and expressly provides that "a labor organization or its agents shall commit an unfair labor practice *** in duty of fair representation cases only by intentional misconduct in representing employees" (*id.* § 10(b)(1)(ii)).

¶ 24 Zander contends that his claim against the FOP is not subject to the Board's exclusive jurisdiction—or, presumably, to the Labor Relations Act's six-month statute of limitations and intentional misconduct standard—because he has not alleged that the FOP breached its duty of fair representation. But Zander cannot avoid the Labor Relations Act's comprehensive statutory scheme through creative pleading. See *Montplaisir*, 875 F.2d at 4 (rejecting union members' effort to avoid "labor-law preemption" by choosing "not to couch their complaint as an unfair labor practice"). At bottom, Zander's attempt to hold the FOP liable for Carlson's performance at the arbitration proceeding challenging Zander's termination rests on the FOP's

duty to fairly represent Zander in matters related to the collective bargaining process. Because the Labor Relations Act "creates and defines" the FOP's duty of fair representation, Zander "must look to the provisions of that Act for his remedy." *Brown*, 690 A.2d at 959. Zander's claim thus falls within the Board's exclusive jurisdiction, and the circuit court correctly dismissed it for lack of subject matter jurisdiction.

<h2 align="center">III. CONCLUSION</h2>

For the foregoing reasons, we affirm the circuit court's judgment dismissing Zander's complaint.

Affirmed.