**2020 IL 125691**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 125691)

RUSSELL ZANDER, Appellant, v. ROY CARLSON *et al.*, Appellees.

*Opinion filed November 19, 2020.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Kilbride, Garman, Theis, Neville, and Michael J. Burke concurred in the judgment and opinion.

**OPINION**

¶ 1        The issue in this case is whether a municipal police officer who elected to challenge his termination through the arbitration process set forth in the collective bargaining agreement between his union and his employer may bring an action for damages in circuit court against the union and the union lawyer assigned to assist him when the arbitration proved unsuccessful and he was not reinstated. The circuit court concluded that he could not and dismissed his cause of action with prejudice.

As grounds for its decision, the court adhered to principles articulated by the United States Supreme Court in *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238 (1962), and held that the union attorney was immune from personal liability where, as here, his actions were taken on behalf of a union as part of the collective bargaining process. With regard to the police officer's dispute with the union itself, the court concluded that it could not be heard in circuit court but rather had to be brought before the Illinois Labor Relations Board, which has exclusive jurisdiction over claims that a union has violated its duty to fairly represent its members. The appellate court affirmed. 2019 IL App (1st) 181868. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                              BACKGROUND

¶ 3        The circuit court dismissed the terminated police officer's cause of action based on a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). For purposes of our review, we therefore accept as true all well-pleaded facts in the officer's complaint. *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 3.

¶ 4        According to the complaint, plaintiff, Russell Zander, was employed by the Village of Fox Lake as a patrol officer. In December 2014, the Village's police chief placed him on administrative leave based on allegations of misconduct arising from multiple job-related incidents. The chief subsequently filed formal disciplinary charges against him and recommended that he be terminated.

¶ 5        At all relevant times Zander was a member of the Illinois Fraternal Order of Police Labor Council (FOP). The FOP is a labor union organized pursuant to the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 2018)). It represents thousands of public safety and criminal justice employees with collective bargaining rights under the Act, and it represented Zander pursuant to a collective bargaining agreement it had with the Village.

¶ 6        In response to the disciplinary charges filed against him, Zander contacted the FOP for assistance. The FOP, in turn, initially assigned an attorney named Mahoney to handle the matter. After some preliminary proceedings, the FOP assigned Roy Carlson, one of its staff attorneys, to take over from Mahoney. Carlson was an

employee of the FOP, and the choice of Carlson to assist Zander was solely the FOP's. Zander had no input into the decision, had no retainer agreement with Carlson, and was not charged for Carlson's services. The FOP paid Carlson from dues collected from its members, including Zander.

¶ 7    Under the Illinois Municipal Code (65 ILCS 5/1-1-1 *et seq.* (West 2018)), police officers such as Zander who face removal or discharge are entitled to a hearing before the local board of fire and police commissioners unless a collective bargaining agreement between the municipality and the officer's union provides for arbitration of such disputes. *Id.* § 10-2.1-17. The collective bargaining agreement between the Village and the FOP in this case did contain an arbitration provision, but that provision gave officers the option of pursuing either avenue of recourse, police board hearing or use of the agreement's grievance-arbitration procedure, an option Illinois law permits. *Id.*

¶ 8    On Carlson's advice, Zander elected to proceed via arbitration. After a two-day hearing, the arbitrator upheld the decision to terminate Zander's employment and refused to reinstate him. Unhappy with this outcome, Zander sued Carlson and the FOP for damages in circuit court.

¶ 9    Zander's complaint was in two counts. Count I, directed against both Carlson and the FOP, sought recovery for legal malpractice. It alleged that, in their representation of Zander, Carlson and the FOP were "negligent and failed to exercise a reasonable degree of care and skill, and otherwise breached the standard of care" they owed him in various ways. More specifically, Zander charged that Carlson lacked sufficient experience to handle his case, that the FOP should not have assigned a lawyer as inexperienced as Carlson to represent him, and that both Carlson and the FOP failed to properly investigate the charges against him and did not adequately prepare for or conduct the proceedings before the arbitrator. Zander alleged that the charges against him were relatively minor but arose at a time when the local police department was under scrutiny because of unrelated misconduct by another officer and that he "in essence became a scapegoat, losing his employment permanently following an arbitration that from the beginning was designed to favor the Chief of Police and the Chief's recommendations." Zander alleged that, if he had been represented by a competent attorney and been properly advised to seek a hearing before the police commission rather than pursue arbitration, he would "in

all probability *** have received, at worst, a much lesser disciplinary finding which would not have resulted in the permanent loss of his employment as a police officer, and in all likelihood the possibility of ever becoming involved in police work ever again."

¶ 10    Count II of Zander's complaint was directed against the FOP alone. It asserted that the FOP is not authorized to practice law, has no right to employ attorneys to furnish legal services under its direction to FOP members, and cannot control "through policy manuals and otherwise" what attorneys assigned to help FOP members may do. It further alleged, however, that because of the business relationship between Carlson and the FOP, and "due to the FOP's principle [*sic*] involvement in the disciplinary matters brought against Zander and its control of Defendant Carlson," the FOP "assumed the same fiduciary duty to Zander that Carlson had" and "should be vicariously liable for the acts and actions of Carlson" with regard to his representation of Zander.

¶ 11    The FOP and Carlson filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). As grounds for their motion, they asserted that, under *Atkinson*, 370 U.S. 238, and its progeny, union agents or employees like Carlson cannot be held personally liable for actions undertaken in the course of their employment in furtherance of collective bargaining rights, including grievance procedures such as the one involved in this case. They further contended that the claims advanced by Zander are tantamount to a charge that the FOP breached its duty of fair representation toward Zander and that all such claims are within the exclusive jurisdiction of the Illinois Labor Relations Board.

¶ 12    Zander responded by challenging the way in which Carlson and the FOP characterized his cause of action. Notwithstanding the fact that it arose in the context of a grievance procedure governed by a collective bargaining agreement, Zander insisted that his claim emanated from the attorney-client relationship he had with Carlson and was, at its core, a legal malpractice action as described in his complaint and should be treated as such. Zander argued, in the alternative, that even if he did not have an attorney-client relationship with Carlson, he could nevertheless sue Carlson for malpractice on the theory that he was a third-party beneficiary of the relationship between Carlson and the FOP. Finally, Zander contended that,

because he sought to hold defendants liable based on breach of the standard of care by Carlson rather than breach of the duty of fair representation by the FOP, the matter did not fall within the exclusive jurisdiction of the Illinois Public Labor Relations Board.

¶ 13    Following a hearing, the circuit court rejected Zander's position, agreed with the arguments advanced by Carlson and the FOP, and granted their motion to dismiss. As defendants argued it should, the circuit court relied on the United States Supreme Court's decision in *Atkinson*, which immunizes union members and officers against personal liability for actions taken while acting as a union representative in the context of the collective bargaining process. Although that case was decided under federal law, the circuit court found it appropriate to follow that precedent in light of the close parallels between federal labor law and the Illinois Public Labor Relations Act. The circuit court was likewise persuaded by the FOP's argument that Zander's claims against it fell within the exclusive jurisdiction of the Illinois Public Labor Relations Board.

¶ 14    Zander moved for reconsideration, arguing for the first time that Carlson should be subject to liability to the extent of his malpractice insurance coverage. The circuit court denied the motion. It concluded that it had applied the law correctly and that Zander's failure to raise the new argument prior to filing his motion to reconsider resulted in forfeiture.

¶ 15    Zander appealed. The appellate court agreed that the rationale of *Atkinson* was applicable to this dispute, that Carlson could not be held personally liable because his actions were undertaken in his capacity as an agent of the union in furtherance of collective bargaining rights, and that the claims advanced against the FOP by Zander fell within the exclusive jurisdiction of the Illinois Public Labor Relations Board. It therefore affirmed. 2019 IL App (1st) 181868.

¶ 16    Zander petitioned for leave to appeal from the appellate court's judgment, which we allowed. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). A group consisting of the American Federation of State, County and Municipal Employees, Council 31; the Illinois Education Association—NEA; and the Illinois Federation of Teachers and Services Employees International Union, Local 73, sought and was granted leave to file an *amicus* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). We also allowed a motion to file an *amicus* brief filed by the Illinois Public Employer Labor Relations

Association.

¶ 17                                    ANALYSIS

¶ 18        Because this appeal arose in the context of an order granting a combined motion
to dismiss under section 2-619.1 of the Code of Civil Procedure, our review is
*de novo*. *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 9; *Patrick
Engineering*, *Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. After undertaking
our own examination of the record and the applicable law, we have reached the
same conclusion as both the circuit and appellate courts: Zander's cause of action
was properly dismissed.

¶ 19        We first address Zander's claim against Carlson, the FOP lawyer assigned by
the union to handle his grievance. Section 301(b) of the Labor Management
Relations (Taft-Hartley) Act, 1947 (Labor Management Relations Act) (29 U.S.C.
§ 185(b) (2018)) provides that "[a]ny money judgment against a labor organization
in a district court of the United States shall be enforceable only against the
organization as an entity and against its assets, and shall not be enforceable against
any individual member or his assets." In enacting this law, Congress "declared its
view that only the union was to be made to respond for union wrongs, and that the
union members were not to be subject to levy." *Atkinson*, 370 U.S. at 247-48.

¶ 20        An established line of cases beginning with the United States Supreme Court's
decision in *Atkinson* has consistently interpreted this statute to mean that individual
union members, agents, and representatives are not subject to civil liability for
action they undertake on behalf of the union.[1] See *Weiner v. Beatty*, 116 P.3d 829,
831 (Nev. 2005); *Arnold v. Air Midwest, Inc.*, 100 F.3d 857, 861 (10th Cir. 1996);
*Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989). Indeed, the Supreme Court
has gone so far as to extend this immunity to individual union officers, agents, or
members even if that individual's conduct was unauthorized by the union and was
in violation of an existing collective bargaining agreement. *Complete Auto Transit,
Inc. v. Reis*, 451 U.S. 401, 402, 415-17 (1981). The immunity obtains "in contract

---

[1]In 1970, *Atkinson* was overruled in part by *Boys Markets, Inc. v. Retail Clerks Union, Local
770*, 398 U.S. 235, 238 (1970), but for reasons unrelated to the points of law relevant to this dispute.

or tort, or both, \*\*\* or in a separate action for damages." *Atkinson*, 370 U.S. at 249; *Montplaisir*, 875 F.2d at 4.

¶ 21   Of course, federal labor law is not directly controlling here. The Village of Fox Lake is a political subdivision of the State of Illinois. The federal Labor Management Relations Act does not apply to claims by public employees against such entities. *Marconi v. City of Joliet*, 2013 IL App (3d) 110865, ¶ 22; *Davenport v. Washington Education Ass'n*, 551 U.S. 177, 181 (2007); *McGreal v. Village of Orland Park*, 12 C 5135, 2013 WL 3984477, at \*11 (N.D. Ill. Aug. 2, 2013). Rather, it is the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2018)) that governs our assessment of whether Zander may sue Carlson for malpractice. We have recognized, however, that because of close similarities between that Act and federal labor law, federal decisions interpreting the National Labor Relations Act provide useful guidance in construing and applying the Illinois Public Labor Relations Act. *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 46 n.8; *Chief Judge of the Sixteenth Judicial Circuit v. Illinois State Labor Relations Board*, 178 Ill. 2d 333, 339 (1997); *Illinois Fraternal Order of Police Labor Council v. Illinois Local Labor Relations Board*, 319 Ill. App. 3d 729, 737 (2001); *Rockford Township Highway Department v. State Labor Relations Board*, 153 Ill. App. 3d 863, 878 (1987).

¶ 22   Zander does not challenge the propriety of following federal precedent in general. Likewise, he does not take exception to the proposition that *Atkinson* provides useful guidance when applying the Illinois Public Labor Relations Act. Rather, he argues that *Atkinson* is distinguishable and should not be construed to bar actions such as his that seek recovery from union lawyers based on their alleged professional malpractice. In Zander's view, claims based on legal malpractice present a special case. He contends that this court's Rules of Professional Conduct create a higher standard of care and that the state's interest in protecting the public from legal malpractice should transcend federal labor law.

¶ 23   As a preliminary matter, we note that there is no issue in this case of federal law taking precedence over the canons governing the conduct of lawyers. That is so for two reasons. First, as we have just noted, federal law does not control. We look to federal precedent as guidance, not because we must, but because of the similarity between federal labor law and the law in Illinois. When we elect to follow that

precedent, we adopt it as a part of our interpretation of the law enacted by the Illinois General Assembly. To the extent competing principles are involved, striking the appropriate balance is therefore a matter of state law alone. Second, and in any case, immunizing union lawyers from personal liability for actions taken on behalf of the unions that employ them does not relieve those lawyers of their professional obligations pursuant to this court's Rules of Professional Conduct. If a union lawyer violates the Rules of Professional Conduct, he or she remains subject to disciplinary action. The conflict Zander seeks to create is therefore a false one.

¶ 24    The next hurdle Zander faces is that Carlson did not actually have an attorney-client relationship with Zander. Carlson was employed by the FOP and appeared in the proceedings as a representative of the union to protect Zander's rights under the collective bargaining agreement it had negotiated on behalf of all the members of the bargaining unit. According to Zander's complaint, Carlson was "held out to the members of the FOP as the FOP's attorney" who would handle labor disputes or grievances for the union on behalf of its members, Carlson met frequently with the FOP regarding the Zander matter, Carlson and the union shared information and had business discussions about the case, Carlson operated under the FOP's control, and Zander had no input into the union's decision to appoint Carlson to his case.

¶ 25    Zander's complaint does allege that, notwithstanding the foregoing, an attorney-client relationship existed between him and Carlson. Zander argues that we must accept this characterization as true for purposes of our review. He is incorrect. The existence of an attorney-client relationship is a legal conclusion. See *Dietz v. Doe*, 935 P.2d 611, 616 (Wash. 1997). A motion to dismiss does not admit conclusions of law or conclusory factual allegations unsupported by specific facts alleged in the complaint. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16.

¶ 26    Although this court has not previously addressed applicability of *Atkinson* to lawyers employed by labor unions while engaged in matters related to collective bargaining, the subject has been addressed elsewhere. The leading case is *Peterson v. Kennedy*, 771 F.2d 1244, 1257 (9th Cir. 1985). In that decision, the United States Court of Appeals for the Ninth Circuit rejected the position urged by Zander in this case and concluded that union employees who are attorneys are subject to the

*Atkinson* rule to the same extent as other union employees in matters arising under a collective bargaining agreement or that otherwise relate to the collective bargaining process. In reaching that conclusion, the court noted that "[l]abor grievances and arbitrations frequently are handled by union employees or representatives who have not received any professional legal training at all." *Id.* at 1258. When a union instead hires an attorney "to act for it in the collective bargaining process"—including in an "arbitration proceeding" where "the underlying grievance belongs to a particular union member"—

> "[t]hat union member surely is justified in expecting the attorney to perform in a competent and professional manner; a portion of his dues is paid to enable the union to represent his interests vis-a-vis his employer effectively in all stages of the collective bargaining process. Nevertheless, when the union is providing the services, it is the union, rather than the individual business agent or attorney, that represents and is ultimately responsible to the member." *Id.*

The court continued,

> "We do not believe that an attorney who is handling a labor grievance on behalf of a union as part of the collective bargaining process has entered into an 'attorney-client' relationship in the ordinary sense with the particular union member who is asserting the underlying grievance. Although the attorney may well have certain ethical obligations to the grievant, his principal client is the union; it is the union that has retained him, is paying for his services, and is frequently the party to the arbitration proceedings." *Id.*

The court further explained:

> "The legal theory we describe tracks the practical realities of labor-management relations in the United States today. The union member looks to his union to save his job, gives it credit when a dispute is resolved in his favor, and holds it responsible when his discharge is upheld or he loses other important rights. He views the union attorney as an arm of his union rather than as an individual he has chosen as his lawyer. In fact, it is not uncommon for the union member to be completely unaware, at least prior to the arbitration hearing, of who on the union's staff is actually handling his grievance." *Id.* at 1258-59.

In those circumstances, the court held, "the rationale behind the *Atkinson* rule is squarely applicable." *Id.* at 1258.

¶ 27    The principle that attorneys who perform services for and on behalf of a union may not be held liable in malpractice to union members pursuing grievances where, as in this case, the services performed by the attorneys were part of the collective bargaining process has been consistently followed by federal courts for more than three decades. *Carino v. Stefan*, 376 F.3d 156, 160 (3d Cir. 2004) (*Atkinson* prohibits claims made by a union member against attorneys employed by or retained by the union to represent the member in a labor dispute); *Waterman v. Transport Workers' Union Local 100*, 176 F.3d 150, 150 (2d Cir. 1999) (*per curiam*) ("[U]nder *Atkinson* a union's attorneys may not be sued by an individual union member for actions taken pursuant to a collective bargaining agreement."); *Arnold*, 100 F.3d at 862 ("[A]n attorney who performs services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services performed constitute a part of the collective bargaining process."); *Breda v. Scott*, 1 F.3d 908, 909 (9th Cir. 1993) (employees cannot sue inside or outside counsel for services rendered under a collective bargaining agreement); *Montplaisir*, 875 F.2d at 7 ("[F]or purposes of the *Atkinson* principle, [attorneys] must be treated the same as other union agents.").

¶ 28    Courts applying state public sector labor laws have reached the same conclusion based on the rationale of *Atkinson* and its progeny. *Weiner*, 116 P.3d at 833 (school district employee's claim for legal malpractice against attorney furnished by union to handle arbitration barred—"[a]s an agent of the union, the attorney is not susceptible to a malpractice claim; rather, a claim by the union member will only lie against the union itself based on a breach of the duty of fair representation"); *Stafford v. Meek*, 762 So. 2d 925, 926 (Fla. Dist. Ct. App. 2000) (union attorney who handled grievance proceeding filed by school board employee challenging her termination was immune from suit in subsequent action brought by employee for legal malpractice, negligence, and breach of fiduciary duty—"[i]t is well settled that union agents may not be held individually liable when they act on behalf of the union in a collective bargaining activity"); *Brown v. Maine State Employees Ass'n*, 1997 ME 24, ¶ 10, 690 A.2d 956, 960 (attorney provided by state employees' union to handle grievance involving employee who had been suspended and demoted held to be immune from suit for legal malpractice brought by the employee after

grievance dismissed); *Best v. Rome*, 858 F. Supp. 271 (D. Mass 1994), *aff'd*, 47 F.3d 1156 (1st Cir. 1995) (outside counsel hired by union to handle arbitration involving termination of civilian police department employee held to be immune in suit brought by the employee when the arbitration yielded adverse outcome—applying Massachusetts labor law).

¶ 29     The decisions of the circuit and appellate courts in the matter before us were fully consistent with this long and consistent body of precedent. Zander has cited no relevant authority that might warrant a contrary position. By way of example, one of the decisions to which he devotes considerable discussion, *Warren v. Williams*, 313 Ill. App. 3d 450 (2000), did not involve a union member or concern collective bargaining. Unsurprisingly, it made no mention at all of the cases we have just discussed.

¶ 30     Another of Zander's authorities, *Niezbecki v. Eisner & Hubbard, P.C.*, 717 N.Y.S.2d 815 (Civ. Ct. 1999), was a lower-level trial court matter in which a union member attempted to sue a law firm for fraud and malpractice arising from the firm's work in connection with his grievance proceedings. Following established precedent, the court concluded, predictably: "Defendant was legal counsel hired by a union to represent plaintiff in grievance proceedings pursuant to a collective bargaining agreement. In such cases, counsel enjoys unqualified immunity from personal liability for malpractice and related misconduct. Therefore the court grants summary judgment dismissing the complaint." *Id.* at 823. This decision thus refutes rather than supports Zander's position.

¶ 31     The same is true of *Aragon v. Federated Department Stores, Inc.*, 750 F.2d 1447 (9th Cir. 1995). In that case, a union member who was dissatisfied with the outcome of her grievance sued her employer for breach of the collective bargaining agreement, her union for breach of its duty of fair representation, and the law firm hired by the union to handle the grievance for malpractice. *Id.* at 1448. Relevant to this dispute is that the federal court ruled that the malpractice claim should be remanded to state court, and it was. *Id.* at 1458. On remand, the trial court entered summary judgment in favor of the law firm and against the union member. The appellate court affirmed, expressly adopting the rationale of *Atkinson*, *Peterson*, and related cases (*Aragon v. Pappy, Kaplon, Vogel & Phillips*, 262 Cal. Rptr. 646, 653-54 (Ct. App. 1989)), a development Zander does not mention.

¶ 32    In sum, the circumstances of this case fall squarely within the *Atkinson-Peterson* line of authority. As have other courts when interpreting their state public labor relations statutes, and as the circuit and appellate courts did here, we believe that line of authority should guide our interpretation of the Illinois Public Labor Relations Act. Consistent with that authority, we conclude that Carlson was immune from individual liability for any actions he took or failed to take in connection with assisting Zander on behalf of the union pursuant to the collective bargaining agreement following Zander's termination by the Village. We therefore agree with the appellate court that Zander's malpractice claim against Carlson was properly dismissed.

¶ 33    Zander cannot avoid this conclusion based on his alternative theory that he was a third-party beneficiary of the relationship between Carlson and the FOP. As the appellate court correctly recognized, applying third-party beneficiary principles to override the immunity that would otherwise protect a union attorney under *Atkinson* would shift liability for a union's representation of its members from the union itself to the union's agent, the very thing *Atkinson* and *Peterson* say must not be done. 2019 IL App (1st) 181868, ¶ 20. Other courts considering the question have reached the same conclusion. See *Carino*, 376 F.3d at 162; *Aragon*, 262 Cal. Rptr. at 654. Zander has pointed to no authority that would support a contrary result.

¶ 34    Here, as in the appellate court, Zander has raised the additional argument that Carlson should be subject to liability to the extent he was covered by malpractice insurance. We reject this argument as well. For one thing, Zander cites no relevant precedent to support his theory. The cases he invokes pertain to bankruptcy and sovereign immunity, separate and unrelated areas of the law. That aside, Zander faces a second and more basic problem: he did not raise the issue in the circuit court until he moved for reconsideration of the order granting defendants' motion to dismiss. Arguments raised for the first time in a motion for reconsideration in the circuit court are forfeited (*Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 36) as the circuit and appellate courts both correctly recognized. Although forfeiture is a limit on the parties rather than on the courts (*Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 41), Zander offers no persuasive reason why we should overlook forfeiture in this case, and we decline to do so.

¶ 35     We turn then to Zander's claims against the FOP itself. The Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2018)) imposes on public sector labor unions a duty to fairly represent their members. *Foley v. American Federation of State, County, & Municipal Employees*, 199 Ill. App. 3d 6, 9 (1990). The duty of fair representation arises from the union's statutory role as exclusive bargaining agent. *Jones v. Illinois Educational Labor Relations Board*, 272 Ill. App. 3d 612, 619 (1995). If the union fails to fairly represent the interests of all members of a bargaining unit, it commits an unfair labor practice pursuant to section 10(b)(1) of the Act (5 ILCS 315/10(b)(1) (West 2018)). See *Foley*, 199 Ill. App. 3d at 9-10.

¶ 36     The General Assembly has made such claims subject to specific statutory requirements. The Illinois Public Labor Relations Act expressly provides that "a labor organization or its agents shall commit an unfair labor practice *** in duty of fair representation cases only by intentional misconduct in representing employees." 5 ILCS 315/10(b)(1)(ii) (West 2018). Such claims are subject to a six-month limitations period which begins to run when the charging party learns or has notice of the actions that constitute the alleged unfair labor practice. *Id.* § 11(a); *Michels v. Illinois Labor Relations Board*, 2012 IL App (4th) 110612, ¶ 38. In addition, no claim that a union has committed an unfair labor practice, including a claim that it has breached its duty of fair representation, may be brought in circuit court. All such claims fall, instead, within the exclusive jurisdiction of the Illinois Labor Relations Board. 5 ILCS 315/5 (West 2018); *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 163 (1998); *Foley*, 199 Ill. App. 3d at 10.

¶ 37     Here, as in the lower courts, Zander attempts to move his claim against the FOP beyond the reach of the Illinois Public Labor Relations Act, and thus place it outside the exclusive jurisdiction of the Illinois Labor Relations Board, by characterizing it as something other than a claim of breach of duty of fair representation. But Zander cannot escape the Labor Relations Act's comprehensive statutory scheme through creative pleading. As federal courts have recognized when applying federal labor law under similar circumstances, the fact that union members may have chosen

    "not to couch their complaint as an unfair labor practice cuts no mustard. Where labor-law preemption is an issue, creative labelling cannot carry the day. Rather, the needed reconnaissance focuses upon 'the conduct being regulated, not the formal description of governing legal standards....' *Amalgamated Ass'n*

- 13 -

*of Street, Electric Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 292, 91 S. Ct. 1909, 1920, 29 L.Ed.2d 473 (1971); see also *Columbia Power Trades*, 671 F.2d at 329 (FLRA's exclusive jurisdiction cannot be thwarted by party's characterization of lawsuit)." *Montplaisir*, 875 F.2d at 4.

¶ 38     In this case, Zander asserts that "the underlying facts do not stem [from] the collective bargaining act." From the allegations in his complaint, however, it is manifest that the dispute giving rise to this litigation arises entirely from his status as a union member under a collective bargaining agreement between the FOP and Zander's now-former employer. But for the collective bargaining agreement that governed Zander's employment by the Village, the FOP would have owed him no duty. Indeed, it would have had no relationship with him of any kind. The appellate court was therefore correct when it recognized that Zander's attempt to hold the FOP liable for its staff attorney's conduct with respect to the arbitration proceeding rests on the FOP's duty to fairly represent Zander in matters related to the collective bargaining process. 2019 IL App (1st) 181868, ¶ 24. Zander's claim against the union therefore fell within the exclusive jurisdiction of the Illinois Labor Relations Board and was properly dismissed.

¶ 39                                          CONCLUSION

¶ 40     For the foregoing reasons, the appellate court was correct when it upheld the circuit court's dismissal of Zander's cause of action. The judgment of the appellate court, which affirmed the circuit court's dismissal of Zander's complaint, is therefore affirmed.

¶ 41     Affirmed.