# Illinois Official Reports

## Appellate Court

---

**Ryan v. City of Chicago, 2019 IL App (1st) 181777**

---

| | |
|---|---|
| Appellate Court Caption | SHEILA RYAN, Plaintiff-Appellant, v. THE CITY OF CHICAGO and JUDY FRYDLAND, in Her Official Capacity as Acting Commissioner of the Department of Buildings for the City of Chicago, Defendants-Appellees. |
| District & No. | First District, Third Division<br>No. 1-18-1777 |
| Filed | December 11, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-CH-14426; the Hon. Kathleen M. Pantle, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | David S. Ruskin and Katherine H. Oblak, of Horwood Marcus & Berk Chtrd., of Chicago, for appellant.<br><br>Edward N. Siskel, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Stephen G. Collins, Assistant Corporation Counsel, of counsel), for appellees. |

Panel     PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice Gordon specially concurred, with opinion.

**OPINION**

¶ 1  This is one of two actions Sheila Ryan is pursuing because a house was constructed in close proximity to her long-term residence. Ryan lives at 640 West 37th Street, in Chicago's Bridgeport neighborhood, in a one-story brick bungalow that was built more than 100 years ago on or near her east property line. In 2015, a two-story brick residence was built on what had been open space to the west at 638 West 37th Street (638 West). Ryan's property survey indicates the new construction is only 1.42 feet east of her lot line. Ryan sought a writ of *mandamus* against the City of Chicago and Judy Frydland as the commissioner of the municipality's Department of Buildings to direct "[t]hat the west wall of the new house be built in compliance with the two foot Minimum Side Setback" set out in the local zoning ordinance (Zoning Ordinance). Chicago Municipal Code § 17-1-0100 *et seq.* (added May 26, 2004). Ryan's *mandamus* count also asked "[t]hat the permit for the structure at 638 W. 37th Street be revoked with a direction from the City of Chicago that plans in compliance with the Chicago Zoning Ordinance be submitted," that the municipality "take the necessary actions to ensure compliance" with the Zoning Ordinance and the municipal building code, and for entry of "[s]uch other and further relief as this Court deems appropriate." The circuit court granted a motion to dismiss by the municipality and the commissioner after finding that Ryan failed to allege a clear, nondiscretionary duty of the defendants to seek remedies or use enforcement powers for violations of the Zoning Ordinance. See 735 ILCS 5/2-615 (West 2018) (providing for dismissal for failure to state a claim). Ryan's appeal from the dismissal order is interlocutory due to her pending count for a mandatory injunction that directs the homebuilder and the new property owner "to move the west wall of the structure at 638 W. 37th Street" to achieve a two-foot setback. Also pending in the circuit court is Ryan's separate action seeking administrative review of the decision of the Zoning Board of Appeals of the City of Chicago (Zoning Board) to grant the homebuilder and the property owner a variance from the standard two-foot setback.

¶ 2  The following factual recitation was compiled from the record and the order we entered in Ryan's prior interlocutory appeal regarding her administrative review action.

¶ 3  Building contractor Raymond T. DeGrazia and his company purchased the two lots that are east of Ryan's land in 2014 with the intention of constructing a pair of two-story residences. Each lot is roughly 25 feet wide by 109 feet long. At the time, 638 West, the lot immediately east of Ryan's land, was improved with only a garage at the back of the property and the front of the property adjacent to Ryan's residence was open space. The next east lot, 636 West 37th Street, was improved with a two-story brick building. DeGrazia's nephew, Anthony DeGrazia, would subsequently testify at a zoning variance hearing that he thought Ryan "just did not like [that] the home [was] being built" next to her residence.

¶ 4  In March 2015, Laura Sheehan and James Sheehan contracted to purchase the land and finance the construction of a home on 638 West. Chicago's Zoning Ordinance limits the height

of buildings and provides the minimum distances they must be "set back" from property boundaries on each side. See Chicago Municipal Code § 17-2-0300 *et seq.* (amended Apr. 15, 2015). In April 2015, concrete foundations were poured for the builder's two new residences. The builder intended for the Sheehans' foundation to be two feet from their west property line, in conformance with the RS-3 zoning classification on the north side of 37th Street. The concrete subcontractor, however, made a mistake when staking out the foundation, and the mistake was exacerbated because the subcontractor measured from the back of the lot rather than from the front, Ryan's home "is not built straight," and the front of her house angles closer to the Sheehans' lot. The proximity of the houses is further narrowed by the overhang of Ryan's pitched roof encroaching into the setback. (Ryan's "overhang is recorded against title.")

¶ 5     By the time the builder realized the Sheehans' foundation was in the wrong place, the walls and roof were also complete and it was no longer cost effective to alter the construction. Ryan rejected the builder's attempts to amicably resolve her concerns about her adjacent residence. In October and November 2015, respectively, she filed her *mandamus* action and the builder and the Sheehans asked the municipal zoning administrator for a zoning variance. The Sheehans closed on their purchase of 638 West in January 2016.

¶ 6     After her *mandamus* count had been pending for a year, Ryan filed a first amended complaint in late 2016. Ryan did not disclose that although the administrator had declined to grant a variance to the builder and the Sheehans, the Zoning Board had ruled in their favor in June 2016. After an evidentiary hearing, the board granted a 2.5-inch reduction to the RS-3 standard setback. In reaching its decision, the board found that strict compliance would create a hardship on the builder and/or the new owner; the small encroachment was a mistake, not profit-motivated, and would not impact public safety or be injurious to other property; and a variance would not alter the essential characteristics of the neighborhood. Despite the board's findings and approval, Ryan alleged in her first amended *mandamus* count that the other side yards in her neighborhood are of sufficient width to easily allow passage between the residences, but that no person, including emergency responders, can walk between the Ryan and Sheehan residences and that it is impossible to make an emergency exit from Ryan's bedroom window. She also alleged that the close proximity of the two homes was blocking her access to sunlight and preventing maintenance on either structure. Ryan also sought a mandatory injunction to obtain compliance with the RS-3 standard setback and to be compensated for the unlawful taking of her property.

¶ 7     After the circuit court dismissed Ryan's *mandamus* count with prejudice in June 2017, she filed a second amended complaint in order to amend her injunctive relief count only and make apparent that her property survey indicates that the Sheehan residence encroaches beyond the variance that the board granted. Ryan abandoned her unlawful taking count. Her injunctive relief count has been stayed by the circuit court pending this Rule 304(a) interlocutory appeal limited to the *mandamus* count. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). As we noted above, Ryan filed a separate action seeking the circuit court's review of the board's decision to grant a zoning variance for the new construction at 638 West. That case was dismissed when the circuit court determined that the summons Ryan issued to the home's buyer was facially defective and did not confer personal jurisdiction. However, we reversed that determination, and Ryan's administrative review action is now pending in the circuit court. See *Ryan v. Zoning Board of Appeals*, 2018 IL App (1st) 172669, 116 N.E.2d 442.

¶ 8    In this appeal from the dismissal of her *mandamus* count, Ryan contends that it was error to find that she failed to factually state the elements of her claim. Ryan alleged the following statute permitted her to bring a private action to prevent the adjacent violation of the Zoning Ordinance and also entitled her to shift her attorney fees. At appellate arguments, however, she told this court that she would omit this statute if she were to amend her pleading:

> "In case any building or structure, including fixtures, is constructed, *** in violation of an ordinance or ordinances adopted under Division 13 [(concerning zoning)], 31 [(concerning unsafe property)] or 31.1 [(concerning building code violations)] of the Illinois Municipal Code, *** the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, *** or (4) to restrain, correct, or abate the violation. ***

> In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above.

> If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney. This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such.

> ***

> Except in relation to municipality-owned property, this Section does not authorize any suit against a municipality or its officials for any act relating to the administration, enforcement, or implementation of this Division or any ordinance, resolution, or other regulation adopted pursuant to this Division." 65 ILCS 5/11-13-15 (West 2018).

¶ 9    In addition, Ryan relied on section 17-2-0309 of the Zoning Ordinance, which states a mathematical formula for calculating the minimum side setback between detached homes. Chicago Municipal Code § 17-2-0309 (amended Apr. 15, 2015). She alleged the historical facts and contended that the Sheehans' noncomplying residence created "serious safety concerns" for the residents of her street and to persons across the street at Bridgeport Catholic Academy and Nativity of Our Lord Catholic Church. She concluded these circumstances warranted a writ compelling the municipal defendants to take specific actions to abate the noncompliance.

¶ 10    On appeal, she contends the circuit court erred by conflating the Zoning Ordinance's requirement for compliance with the various ways that compliance may be enforced. She contends the discretion granted by the Zoning Ordinance concerns the kind of action to take, not whether to act at all. She contends her allegations fit within the caveat that *mandamus* " 'may be issued to compel the exercise of discretion but not the manner of its exercise.' " *People ex rel. Hogan v. Howarth*, 8 Ill. App. 2d 514, 519-20, 132 N.E.2d 381, 384 (1956) (quoting *Coughlin v. Chicago Park District*, 364 Ill. 90, 110, 4 N.E.2d 1, 10 (1936)). She asks us to conclude that because "the City's zoning ordinance is law" (*City of Chicago Heights v.*

*Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 22, 749 N.E.2d 916, 930 (2001)), the City owes a nondiscretionary duty to ensure that 638 West complies with the local zoning. At appellate arguments, she emphasized that under her interpretation of section 17-2-309, the mathematical formula for calculating the minimum setback for a new residence was to have been applied without any variation.

¶ 11    We first find that Ryan erred in relying on section 11-13-15 of the Illinois Municipal Code as the express basis for her action for *mandamus*, as that statute provides that it "does not authorize any suit against a municipality or its officials for any act relating to the administration, enforcement, or implementation of this Division or any ordinance, resolution, or other regulation adopted pursuant to this Division." 65 ILCS 5/11-13-15 (West 2018). "[S]ection 11-13-15 has been consistently held not to provide a private right of action against a city." *Dunlap v. Village of Schaumburg*, 394 Ill. App. 3d 629, 638, 915 N.E.2d 890, 898 (2009). The purpose of section 11-13-15 is to "empower[ ] private landowners to bring suit against private violators" and thus "afford relief to private landowners in cases where municipal officials are slow or reluctant to act, or where their actions do not protect the landowners' interests." *Dunlap*, 394 Ill. App. 3d at 638. Accordingly, the statute may have been relevant to the separate counts Ryan asserted against the homebuilder and homeowners to comply with the municipal ordinance, but the statute should not have been alleged as part of Ryan's *mandamus* claim against the municipal defendants.

¶ 12    Moreover, "*[m]andamus* is an extreme remedy, used to enforce, as a matter of right, a public officer's performance of his or her official duties where no exercise of discretion on the officer's part is involved." *Perkins v. Quinn*, 2012 IL App (1st) 113165, ¶ 18, 975 N.E.2d 698. "Where a public official has failed or refused to comply with requirements imposed by statute, the court may compel the official to comply with the statutory requirement by means of a writ of *mandamus*." *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 15, 6 N.E.3d 370 (describing *mandamus* as "an extraordinary remedy"). A court will not, however, issue a writ of *mandamus* "when its effect is to substitute the court's judgment or discretion for that of the public officer." *Givot v. Orr*, 321 Ill. App. 3d 78, 90, 746 N.E.2d 810, 820 (2001); *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301-02, 803 N.E.2d 48, 53 (2003) (holding *mandamus* could not be used to compel the Attorney General to prosecute a claim; where, by statute, the decision to prosecute was within the officer's discretion). The extraordinary remedy of *mandamus* "is not appropriate to regulate a course of official conduct or enforce the performance of official duties generally." *Givot*, 321 Ill. App. 3d at 90.

¶ 13    We consider Ryan's allegations in light of these principles as well as the principles that govern our review of a dismissal order. When the circuit court grants a section 2-615 motion to dismiss for failure to state a claim, we apply the *de novo* standard on appeal. *Dumas*, 2014 IL App (1st) 121966, ¶ 11. We "accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473, 905 N.E.2d 783, 789 (2009). Nevertheless, a "plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations" to state a cause of action. *Pooh-Bah Enterprises*, 232 Ill. 2d at 473. Instead, a plaintiff seeking a writ of *mandamus* must allege facts establishing the three elements required for the writ. *Dumas*, 2014 IL App (1st) 121966, ¶ 11. The necessary elements are a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ. *Dumas*, 2014 IL App (1st) 121966, ¶ 15.

¶ 14     Ryan sought a writ that would compel the municipality and the department's commissioner to (1) revoke "the [building] permit for the structure at 638 W. 37th Street" (despite the fact that the structure was fully complete and had been occupied for at least two years), (2) direct the builder and owners to submit new building plans that comply with the zoning ordinance, and (3) direct that the west wall of 638 West "be built in compliance with the two foot Minimum Side Setback."

¶ 15     In our opinion, the circuit court correctly determined that the municipal defendants had no clear duty to perform any of those acts because those parties had discretion in their enforcement of the Zoning Ordinance. Ryan contends the municipal defendants are under a mandate to act where the Zoning Ordinance provides, "All buildings and land used, and all buildings and structures erected, converted, enlarged, reconstructed, moved or structurally altered, *must comply* with all applicable provision of this Zoning Ordinance. Failure to comply with applicable provisions constitutes a violation of this Zoning Ordinance." (Emphasis added.) Chicago Municipal Code § 17-16-200 (added May 26, 2004). Ryan, however, confuses this general pronouncement directed to those who are erecting, remodeling, or moving buildings or structures (in this instance, the DeGrazias and the corporate entity formed to undertake the redevelopment of the two lots to Ryan's east) with the specific ordinance language discussed below granting the municipality a broad range of discretionary authority, which includes the Zoning Board's discretion to permit departures from the general provisions of the ordinance.

¶ 16     The other language Ryan cites is no more persuasive. She relies on the name of the ordinance itself, arguing, "as the Ordinance's name itself suggests—the *Chicago* Zoning Ordinance—the City has the authority to enforce the Ordinance and the writ." The title, however, says nothing about the municipality's duty to pursue the enforcement actions Ryan sought and, thus, does not support her cause of action.

¶ 17     Ryan also argues that her allegations incorporated the violations expressly stated in the Zoning Ordinance, specifically, "erecting a building or other structure in any way not consistent with the requirements of this Zoning Ordinance" and "fail[ing] to comply with any permit or approval granted under this Zoning Ordinance." Chicago Municipal Code §§ 17-16-0202, 17-16-0206 (added May 26, 2004). Even accepting the premise that the location of the Sheehans' existing residence violates the Zoning Ordinance, neither of these prohibitions indicates the municipality is under a clear duty to bring about the new building's relocation.

¶ 18     Ryan erroneously contends that "the Ordinance's plain language states that the Ordinance '*must* be enforced.' " (Emphasis in original.) Ryan fails to support this contention with any citation and we were unable to find this phrase anywhere in the subject code.

¶ 19     Accordingly, we find that the ordinance language Ryan used to frame her *mandamus* count does not mandate that the municipality take any action whatsoever to enforce the land use provisions.

¶ 20     Looking further, the Zoning Ordinance provides the municipality with a broad range of authority, by stating "[t]he city may use any lawful remedy or enforcement powers." Chicago Municipal Code § 17-16-0501 (amended Apr. 24, 2012). The Zoning Ordinance expressly describes some of those powers and specifies that the city "may" exercise them. Chicago Municipal Code § 17-16-0501 (amended Apr. 24, 2012). The described powers include denying or withholding any permits or other forms of authorization (Chicago Municipal Code § 17-16-0503 (amended Apr. 24, 2012)), revoking permits (Chicago Municipal Code § 17-16-0505 (amended Apr. 24, 2012)), ordering that work be immediately stopped (Chicago

Municipal Code § 17-16-0506 (amended Apr. 24, 2012)), seeking injunctive relief (Chicago Municipal Code § 17-16-0508 (amended Apr. 24, 2012)), and pursuing abatement of a violation (Chicago Municipal Code § 17-16-0509 (amended Apr. 24, 2012)). Together, these provisions vest the municipality with broad powers and extensive discretion. But here again, there is no language that requires the municipality to undertake any specific acts to enforce the local zoning.

¶ 21 Having considered the subject code in light of Ryan's arguments, we find that no ordinance provision imposes a mandatory, nondiscretionary duty that would entitle Ryan to the relief she sought.

¶ 22 Ryan's *mandamus* count also does not account for the fact that the Zoning Board has the authority to authorize departures from the general provision of the Zoning Ordinance. In particular, the board has the authority "to grant a variation to permit a reduction in any setback required by applicable regulations." (Emphasis omitted.) Chicago Municipal Code § 17-13-1101-B (amended Apr. 19, 2017). The board did, in fact, exercise that discretion in 2016 regarding the construction at issue. The board issued a resolution approving an application for a variation that reduced the minimum side setback on the west side of the new structure at 638 West (the side abutting Ryan's lot) from 2 feet to 1.8 feet. The purpose of the board's resolution was to allow the Sheehans' house to remain standing where it is, in unusually close proximity to the property line shared with Ryan. Ryan's *mandamus* count, on the other hand, would have the judiciary presume that the municipal defendants have a nondiscretionary duty to enforce the Zoning Ordinance's two-foot minimum side setback as written, without exception, even to the point that the court would require the municipal defendants to take action that contradicts the Zoning Board's decision. At appellate arguments, Ryan took a slightly different tack and contended that the word "may" has been interpreted too broadly in this context. She contended that the zoning scheme provides for rote application of the mathematical formula for calculating a new building's minimum setback and that no one at the municipality has discretion to vary from these calculations. In our opinion, however, the Zoning Ordinance expressly grants the board the power to authorize a smaller setback and the board has exercised its power on the subject property. Ryan's request for a contrary writ of *mandamus* mandating rote, municipal enforcement of the standard two-foot setback fails.

¶ 23 Ryan contends that this conclusion "conveniently ignores" that she is currently pursuing administrative review of the Zoning Board's decision to grant the variance. She points out that if she succeeds in persuading the circuit court that the Zoning Board erred, then 638 West will again be noncompliant with the RS-3 minimum side setback. This is true, and nothing in this order is intended to preclude Ryan from prevailing in her administrative action.

¶ 24 Nevertheless, we would be remiss had we not acknowledged the board's decision. The board's grant of a variance is a historical fact in this land use dispute and it gives further indication that the municipal defendants are not under a clear duty to direct the homebuilder and home buyers that the west wall of 638 West is to "be built in compliance with the two foot Minimum Side Setback in effect in the RS-3 District."

¶ 25 Furthermore, the municipal defendants have no clear duty to take the other enforcement actions Ryan sought in her *mandamus* count. Ryan asked that the writ direct the defendants to revoke "the permit for the structure at 638 W. 37th Street" and require the builder and owners to submit new building "plans in compliance with the Chicago Zoning ordinance." The revocation of a permit, however, is a discretionary act that the zoning administrator "may"

- 7 -

pursue. Chicago Municipal Code § 17-16-0505-A (amended Apr. 19, 2017). Also, the record indicates that the original building plans were "in compliance with the Chicago Zoning ordinance" but that they were not followed with precision by the builder's concrete subcontractor. It is the construction of the new home that led to this legal dispute, not the plans that were submitted. Finally, Ryan requested that the writ require the municipal defendants to "take the necessary actions to ensure compliance with the Chicago Zoning Ordinance and the Chicago Building Code." However, Ryan cannot obtain a writ to compel the general enforcement of the local ordinances. *Mandamus* is an extraordinary remedy that "is not appropriate to *** enforce the performance of official duties generally." *Givot*, 321 Ill. App. 3d at 90.

¶ 26 The dismissal of the Ryan's request for a writ of *mandamus* was proper for the reasons stated above. The dismissal with prejudice and without leave to amend was not error. The ruling is affirmed.

¶ 27 Affirmed.

¶ 28 JUSTICE GORDON, specially concurring:

¶ 29 I agree with the majority decision in this case, but I must write separately on an issue that came up on oral argument. The issue is whether a property owner can file an action in a court of law under the facts of this case when they have an appeal pending before an administrative agency. I do not believe the plaintiff in this case can file a valid *mandamus* action even if that action met the legal requirements of *mandamus* until the administrative appeal is over.

¶ 30 Zoning is generally a legislative function of local government, and courts generally require that a person desiring relief from zoning restrictions first seek that relief from the municipality. Our Illinois Supreme Court in *Bright v. City of Evanston*, 10 Ill. 2d 178, 180 (1956), described this jurisdictional doctrine as requiring "exhausting an administrative remedy." The supreme court explained a few years later that the rationale for the *Bright* doctrine is that local government be given the first opportunity to provide relief and to correct any mistakes that they have made. *Reilly v. City of Chicago*, 24 Ill. 2d 348, 349 (1962). There are exceptions to the exhaustion requirement, but the facts of this case do not fall in the category of any of these exceptions. At oral argument, plaintiff contended that, even if such a rule exists, this case would fall within an exception because plaintiff's request for relief in the *mandamus* action requests relief that the administrative agency cannot provide because the variance given was less than what the adjoining homeowner requested. I disagree because the amount of variance is an issue that the administrative agency can change on appeal. Until that administrative appeal is over, this case is not ripe for a court proceeding.