2021 IL App (1st) 200725-U

THIRD DIVISION
June 30, 2021

No. 1-20-0725

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| BRADLEY HERBST, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 19 CH 09452 |
| CITY OF CHICAGO, a municipal corporation, and | ) | |
| DAVID BROWN, in his official capacity as | ) | |
| Superintendent of the Chicago Police Department, | ) | Honorable |
| | ) | Neil H. Cohen, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) The trial court properly dismissed Count 1 of plaintiff's amended complaint for lack of standing; and (2) the trial court properly dismissed Count 2 of plaintiff's amended complaint for failure to state a cause of action for *mandamus* relief.

¶ 2    Plaintiff Bradley Herbst was employed as a probationary police officer with the Chicago

Police Department when he was discharged in November 2018. Plaintiff filed this action against

defendants, the City of Chicago (City) and former police Superintendent Eddie Johnson[1],

alleging that he was fired in violation of a collective bargaining agreement (CBA) between the

City and the Fraternal Order of Police Chicago Lodge No. 7 (FOP) as well as in violation of the

City's personnel rules. Defendants moved to dismiss plaintiff's amended complaint under a

combined motion pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS

5/2-619.1 (West 2018) for a lack of standing under section 2-619(a)(9) of the Code (735 ILCS

5/2-619(a)(9) (West 2018)) and for failure to state a claim under section 2-615 of the Code (735

ILCS 5/2-615 (West 2018)).

¶ 3        On appeal, plaintiff argues the trial court erred in finding that: (1) he lacked standing to

seek a writ of *mandamus* to enforce the CBA under Count 1 of his amended complaint; and (2)

he failed to state a cause of action for a writ of *mandamus* based on the City's failure to follow

its personnel rules under Count 2.

¶ 4        On May 16, 2017, plaintiff began his employment with the City as a probationary police

officer with the Chicago Police Department. On November 15, 2018, he was terminated in a

letter signed by Robert Landowski, the director of the Chicago Police Department's human

resources division. The letter stated that plaintiff had failed to comply with the rules and

regulations of the City and the Chicago Police Department both on and off duty and his

---

[1] The City subsequently substituted the current police superintendent David Brown for Johnson

in this action. Johnson is no longer employed by the City. However, we will refer to Johnson as

necessary for the actions that occurred while Johnson was employed as the superintendent of

police.

employment was terminated at the close of business on November 15, 2018.[2] The letter also stated that the action was in compliance with Rule IX, Section 2 of the City's personnel rules and regulations. Plaintiff would have completed his 18-month probationary period with the Chicago Police Department on November 16, 2018.

¶ 5      In August 2019, plaintiff filed his initial complaint seeking *mandamus* relief and alleged that he had an "expectation of continued employment" under the CBA. He asserted that Landowski lacked the authority to terminate plaintiff and Johnson had an obligation to reinstate him. He asked the trial court to issue a writ of *mandamus* to direct Johnson to reinstate plaintiff and compensate plaintiff with back pay, and back benefits, including reinstatement of pension credits and seniority rights.

¶ 6      In September 2019, defendants moved to dismiss plaintiff's complaint under section 619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)), arguing that plaintiff lacked standing to enforce the CBA against the City and the cause of action was preempted by federal law. In December 2019, the trial court granted defendants' motion to dismiss, but allowed plaintiff leave to amend his complaint. In its order dismissing plaintiff's complaint, the trial court noted all of the following. The Illinois Public Labor Relations Act (IPLRA) (5 ILCS 315/1 *et seq.* (West 2018)) only permits suits by parties to a CBA and individuals, like plaintiff, are not parties to the CBA. Further, labor organizations recognized by a public employer as the exclusive representative are responsible for representing the interests of all public employees in the unit.

_____

[2] The record on appeal does not disclose the basis for plaintiff's termination or what rules and regulations were violated. Plaintiff is not challenging that there were no bases for his discharge on appeal.

Only after the exhaustion of mandated procedures under a CBA are followed may suits for violations of a CBA be brought and only by the PARTIES to the CBA. Under case law and the IPLRA, an employee is not a party to a CBA and is required to exhaust all of his remedies under a CBA through either a provided grievance procedure or arbitration. It is a union, not an employee, who may first seek relief in the courts and only if a union breaches its duty of fair representation, may an individual employee bring suit. Because the complaint did not allege that plaintiff exhausted his remedies under the CBA, nor that the FOP breached its duty of fair representation to plaintiff, the court found that plaintiff lacked standing.

¶ 7    In January 2020, plaintiff filed his two-count amended complaint for a writ of *mandamus*. In his first count, plaintiff alleged that he had completed 17 months of the 18 month probationary period with the Chicago Police Department before his termination. At the time of his termination, he was "only entitled to the rights, privileges and benefits" provided in Appendix P of the CBA. Appendix P lists which "rights, privileges and benefits" apply upon the completion of the first 12 months of the probationary period and then lists the articles and appendixes of the CBA which are applicable. Appendix P further states, "Any dispute or difference between the parties concerning the interpretation and/or application of any of the above provisions shall be subject to the Grievance Procedure of Article 9."

¶ 8    Article 8 Employee Security was among the listed provisions in Appendix P. Section 8.1 stated, "No Officer covered by this Agreement shall be suspended, relieved from duty or otherwise disciplined in any manner without just cause." Section 8.8 details the Superintendent's authority to suspend an officer as set forth in section 2-84-030 of the Chicago Municipal Code. Section 2-84-030 of the Chicago Municipal Code provides that no officer "may be removed or discharged, or suspended for more than 30 days except for cause upon written charges and after

an opportunity to be heard in his own defense by the police board, or any member or hearing officer designated by it." Chicago Municipal Code § 2-84-030 (amended Nov. 21, 2017). Section 8.8 further provides that when "the Superintendent seeks an Officer's separation from the Department, the Superintendent's current and past practice of suspending Officers for thirty (30) days and filing charges with the Police Board seeking the Officer's separation will not change."

¶ 9    Plaintiff alleged that the FOP did not owe him a duty of fair representation because of his probationary status and plaintiff had no right to the grievance procedure to contest his termination. Defendants failed to notify plaintiff of the "specific allegations, charges or evidence against him or provide him a meaningful opportunity to respond to them." Johnson had the sole authority to seek plaintiff's separation from the department by suspending him for 30 days and filling charges with the police board, but Johnson did not suspend plaintiff or file charges seeking his termination. Plaintiff was not informed of the charges or allegations against him, nor was he provided a termination hearing and the opportunity to respond. Plaintiff asked the trial court to issue a writ of *mandamus* to direct defendants to perform their ministerial non-discretionary duty and reinstate plaintiff to his former position with full senior credits and to compensate him for all benefits and back pay.

¶ 10    Under Count 2, plaintiff alleged that defendants failed to follow the City's personnel rules because Johnson was the only individual authorized to terminate or discipline plaintiff. According to plaintiff, he was terminated by Landowski, the director of human resources division for the Chicago Police Department. The termination letter signed by Landowski stated that it was sent in compliance with Rule IX, Section 2 of the City's personnel rules. Section 2 of Rule IX states, in relevant part: "A department head may discharge an employee during the probationary period and should notify the Commissioner of Human Resources in writing. Failure

of the department head to provide notification to the Department of Human Resources shall not affect the termination." Plaintiff asserted that he was entitled to a writ of *mandamus* because defendants failed to follow the City's personnel rules. Plaintiff asked the trial court to issue a writ of *mandamus* to direct defendants to perform their ministerial non-discretionary duty and reinstate plaintiff to his former position with full senior credits and to compensate him for all benefits and back pay.

¶ 11    In February 2020, defendants moved to dismiss plaintiff's amended complaint under section 619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). Defendants again argued that plaintiff lacked standing to enforce the CBA under Count 1 because he is not a party to the CBA. For Count 2, defendants argued that plaintiff failed to state a cause of action for a writ of *mandamus* under the City's personnel rules. Defendants also contended that plaintiff's claim for reinstatement and back pay under Count 2 is barred by *laches* based on an unreasonable delay in seeking *mandamus* relief and prejudice to the City.

¶ 12    On April 30, 2020, following briefing by the parties, the trial court granted defendants' motion to dismiss plaintiff's amended complaint with prejudice. In its written order, the court again found that plaintiff lacked standing to assert his claim under Count 1 because plaintiff had asserted the same claim as in his initial complaint and he had not offered "any valid basis for reconsideration." In Count 2, the court held that plaintiff failed to allege any specific facts to support his conclusory allegations that he was terminated by Landowski, rather than his department head, Johnson. The court further found that Count 2 did not properly seek *mandamus* relief because he was seeking an order directing defendants to exercise their discretion in a particular manner and that defendant's delay in filing his cause of action was unreasonable and was barred by *laches*.

¶ 13    On appeal, plaintiff asserts that the trial court erred in dismissing his amended complaint seeking *mandamus* relief with prejudice.

¶ 14    Section 2-619.1 is a combined motion that incorporates sections 2-615 and 2-619 of the Code. 735 ILCS 5/2-619.1, 2-615, 2-619 (West 2018). We review a trial court's dismissal of a complaint under section 2-619.1 of the Code *de novo*. *Morris v. Harvey Cycle and Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009). A motion to dismiss pursuant to section 2-615 of the Code attacks the legal sufficiency of the complaint by alleging defects on its face. *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. In contrast, a motion to dismiss pursuant to section 2-619 admits the legal sufficiency of the complaint but raises an affirmative defense or another basis to defeat the claims alleged. *Id.* Section 2-619(a)(9) permits involuntary dismissal where "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2018).

¶ 15    For the purposes of this appeal, we accept as true all the well-pleaded facts in plaintiff's amended complaint and draw all reasonable inferences in his favor. *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). We are also mindful of the principle that "exhibits attached to a complaint become a part of a complaint, and if there is any conflict between the factual matters in the exhibits and those alleged in the complaint, the factual matters in the exhibit control." *Coghlan v. Beck*, 2013 IL App (1st) 120891 ¶ 24.

¶ 16    We first address the trial court's dismissal of Count 1 of plaintiff's amended complaint pursuant to section 2-619 for lack of standing. Specifically, plaintiff argues that the trial court erred when it found that he lacked standing to seek *mandamus* relief based on his rights in the CBA. According to plaintiff, he has standing to challenge his termination based on rights intended to protect probationary officers who have completed over 12 months of the 18-month

probationary period. Defendants maintain that the trial court properly dismissed this count because plaintiff lacked standing to sue for a breach of the CBA.

¶ 17     "Standing in Illinois requires 'some injury in fact to a legally cognizable interest.' " *Knox v. Chicago Transit Authority*, 2018 IL App (1st) 162265, ¶ 20 (quoting *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988)). "The doctrine of standing ensures that issues are raised only by those parties who have a sufficient stake in the outcome of the controversy." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 39 (citing *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999)).

¶ 18     Section 16 of the IPLRA provides:

> "After the exhaustion of any arbitration mandated by this Act or any procedures mandated by a collective bargaining agreement, suits for violation of agreements *** between a public employer and a labor organization representing public employees may be brought by the parties to such agreement in the circuit court in the county in which the public employer transacts business or has its principal office." 5 ILCS 315/16 (West 2018).

¶ 19     Section 6(d) of the IPLRA states, in relevant part: "Labor organizations recognized by a public employer as the exclusive representative or so designated in accordance with the provisions of this Act are responsible for representing the interests of all public employees in the unit." 5 ILCS 315/6(d) (West 2018).

¶ 20     It is well settled that only the parties to a CBA have standing to enforce it. *Matthews*, 2016 IL 117638, ¶ 43; *Stahulak v. City of Chicago*, 184 Ill. 2d 176, 180 (1998). The only parties to a collective bargaining agreement are the union and the employer. *Stahulak*, 184 Ill. 2d at 184. "The general purpose of collective bargaining is to enable employees to pool their economic

strength by joining together in a union to improve conditions of employment as a collective group." *Id*. In exchange for the benefits provided by the CBA, plaintiff gave up his individual right to bargain with the City. See *id*. Unions have the duty to fairly represent the interests of all of their members, and a breach of this duty constitutes an unfair labor practice under the IPLRA. *Knox v. Chicago Transit Authority*, 2018 IL App (1st) 162265, ¶ 25 (citing *Foley v. American Federation of State, County & Municipal Employees*, 199 Ill. App. 3d 6, 12 (1990)).

¶ 21    Section 8 of the IPLRA discusses the required grievance procedures: "The collective bargaining agreement negotiated between the employer and the exclusive representative shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise." 5 ILCS 315/8 (West 2018).

¶ 22    Article 9 of the CBA governs the grievance procedures for the FOP and officers. Under section 9.2, a "grievance may be initiated by the [FOP] or an aggrieved Officer. Any Officer shall have the right to present a grievance at any time ***." The section outlines the four steps in the grievance procedure: initiating a grievance, supervisory responses, mediation, and arbitration. Section 9.3 governs the arbitration process in which either party may make a demand if mediation has not resolved the dispute. Section 9.11 provides that it is "the intent of the parties to this Agreement that the procedures set forth in this Article shall be mandatory as to any grievance unless expressly and specifically excluded by the terms of this Agreement."

¶ 23    "An individual member of a collective bargaining unit may bring suit against an employer to challenge an arbitration award only if the court finds that the union, as bargaining agent, breached its duty of fair representation." *Matthews*, 2016 IL 117638, ¶ 44. "The duty of fair representation stems from a union's statutory role as exclusive bargaining agent." *Knox*,

2018 IL App (1st) 162265, ¶ 24. "[A]n individual union member is entitled to judicial review of grievance procedures or arbitration, only if the individual proves that the union's conduct in processing the grievance was arbitrary, discriminatory, or in bad faith." *Stahulak*, 184 Ill. 2d at 180. However, "no claim that a union has committed an unfair labor practice, including a claim that it has breached its duty of fair representation, may be brought in circuit court. All such claims fall, instead, within the exclusive jurisdiction of the Illinois Labor Relations Board." *Zander v. Carlson*, 2020 IL 125691, ¶ 36.

¶ 24    Here, plaintiff has not asserted a claim that the FOP breached its duty of fair representation, nor has he alleged that he sought to grieve his termination through the FOP. Rather, he contends that due to his status as a probationary police officer, he was left without grievance procedures. According to plaintiff, the Appendix P granted him, as a probationary officer, some rights and benefits under the CBA. Specifically, Article 8 governing employee security was extended to probationary officers after they completed 12 months of the probationary period. Under section 8.1, no officer covered under the CBA "shall be suspended, relieved from duty or otherwise disciplined in any manner without just cause." Section 8.8 provided that when the superintendent sought an officer's separation from the Chicago Police Department, the superintendent can suspend the officer for 30 days and file charges with the Police Board. Plaintiff contends that Appendix P did not grant him access to the grievance procedures and because he did not have access, he had no remedy under the CBA and thus, he has standing to pursue this action. We disagree.

¶ 25    While plaintiff contends that he is not challenging a breach of the CBA, he specifically argues that he sought *mandamus* relief because "he was terminated in violation of the rights lawfully vested in him as set forth in the CBA." Plaintiff's attempts at "creative pleading" are not

well taken. See *Zander*, 2020 IL 125691, ¶ 37 (finding the plaintiff could not remove his claim against the FOP from within the statutory scheme of the IPLRA through "creative pleading" "by characterizing it as something other than a claim of breach of duty of fair representation"). Contrary to his assertion otherwise, plaintiff is claiming that a breach of the CBA occurred when he was terminated in violation of the CBA's applicable provisions, but he took no action to grieve his claim that a breach of the CBA occurred. It is well settled that an employee subject to a CBA must at least attempt to exhaust contractual remedies before resorting to a judicial remedy. To state a complaint, plaintiff must allege on the face of his pleading that grievance procedures were followed and exhausted. *Cessna v. City of Danville*, 296 Ill. App. 3d 156, 165 (1998). Plaintiff failed to allege in his complaint that he exhausted his remedies under the CBA.

¶ 26      Additionally, and contrary to plaintiff's argument that he lacks access to the grievance procedures under the CBA, Appendix P specifically provides said access. Appendix P states, "Any dispute or difference between the parties concerning the interpretation and/or application of any of the above provisions shall be subject to the Grievance Procedure of Article 9." Section 9.1 of Article 9 provides, in relevant part:

> "A grievance is defined as a dispute or difference between the parties to this Agreement concerning interpretation and/or application of this Agreement or its provisions. *** The separation of an Officer from service is cognizable only before the Police Board and shall not be cognizable under this procedure ***."

¶ 27      Plaintiff contends that section 9.1 shows that the grievance procedure was not available to him concerning his termination. While he alleged that he complied with the requirement that probationary officers follow the rules and regulations of the City and Chicago Police Department, plaintiff has not challenged the basis for his termination in his complaint. Instead,

he has alleged that his termination was done in violation of the CBA because Johnson failed to suspend him for 30 days or file charges with the police board, as required under Article 8 of the CBA. These are two distinct and different claims. Plaintiff's claim of a breach of the CBA was subject to the grievance procedure because he raised a dispute concerning the application of the CBA. Therefore, he was required to pursue his claim with the FOP by filing a grievance and following the procedure outlined in section 9.2 of the CBA.

¶ 28    In an attempt to avoid the applicable grievance procedure, plaintiff points to Article 2 of the CBA, which provides, in relevant part:

> "The Employer recognizes the [FOP] as the sole and exclusive collective bargaining representative for all sworn Police Officers below the rank of sergeant *** excluding probationary officers employed by the Employer in its Department of Police. *** During the probationary period, an officer is not entitled to any rights, privileges or benefits under this Agreement, except as provided in Appendix P."

According to plaintiff, because the FOP was not the exclusive collective bargaining representative for him as a probationary officer, he had no right to arbitration or the grievance provisions. However, as discussed above, Appendix P specifically granted probationary officers access to the grievance procedure under the CBA and plaintiff's argument lacks merit.

¶ 29    Under both case law and the IPLRA, plaintiff, as an employee, was not a party to CBA and, thus, he lacked standing to pursue a cause of action for a violation of the CBA. See *Matthews*, 2016 IL 117638, ¶ 43; 5 ILCS 315/16 (West 2018). Since plaintiff's complaint does not allege that he exhausted his remedies under the CBA or that the FOP breached its duty of fair representation, he did not have standing to file his claim of a breach of the CBA in his

termination. Accordingly, we find that the trial court properly dismissed Count 1 of plaintiff's amended complaint under section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2018)).

¶ 30    Plaintiff also contends that the trial court erred in dismissing Count 2 of his amended complaint for failure to state a cause of action for *mandamus*. Specifically, he argues that he sufficiently set forth the required elements of a *mandamus* action asserting that he was terminated by the director of the human resources division of the Chicago Police Department in violation of Rule IX, Section 2 of the City's personnel rules.

¶ 31    While we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, a plaintiff may not rely on mere conclusions of law or fact unsupported by specific factual allegations to state a cause of action. *Ryan v. City of Chicago*, 2019 IL App (1st) 181777, ¶ 13. A plaintiff seeking a writ of mandamus must allege facts establishing the three elements required for the writ: a clear, affirmative right to relief, a clear duty of the public official to act, and a clear authority in the public official to comply with the writ. *Id.*

¶ 32    " '*Mandamus* is an extreme remedy, used to enforce, as a matter of right, a public officer's performance of his or her official duties where no exercise of discretion on the officer's part is involved.' " *Id.* ¶ 12 (quoting *Perkins v. Quinn*, 2012 IL App (1st) 113165, ¶ 18). " 'Where a public official has failed or refused to comply with requirements imposed by statute, the court may compel the official to comply with the statutory requirement by means of a writ of *mandamus*.' " *Id.* (quoting *Dumas v. Pappas*, 2014 IL App (1st) 121966, ¶ 15). "However, *mandamus* cannot be used to compel a public official to perform an act which requires the exercise of his discretion." *Dumas*, 2014 IL App (1st) 121966, ¶ 15.

¶ 33    In this case, plaintiff seeks a writ to compel the superintendent of police to reinstate him with back benefits premised on his contention that he was not terminated by the superintendent

of police as required by the City's personnel rules. Plaintiff's argument is premised entirely on a letter sent by Landowski, the human resources director, notifying plaintiff of his termination.

¶ 34    The notification letter stated:

> "Probationary Police Officers are required to follow the rules and regulations of the City of Chicago and the Chicago Police Department while on or off duty. You have failed to comply with these regulations.
>
> You are hereby notified that your employment as a Probationary Police Officer is terminated effective at the close of business on 15 November 2018. This action is in compliance with Rule IX Section 2 of the City of Chicago Personnel Rules and Regulations."

¶ 35    Section 2 of Rule IX states, in relevant part: "A department head may discharge an employee during the probationary period and should notify the Commissioner of Human Resources in writing. Failure of the department head to provide notification to the Department of Human Resources shall not affect the termination."

¶ 36    Plaintiff failed to allege any specific facts to support his claim. Rather, his complaint makes the unsupported conclusory allegation that he was terminated by the director of human resources instead of Johnson. However, the notification letter did not state that plaintiff was being terminated by Landowski, as the director of human resources. Rather, the letter specifically stated that plaintiff was being "notified" of his termination and the termination was "in compliance with Rule IX Section 2 of the City of Chicago Personnel Rules and Regulations." The letter directly contradicts plaintiff's conclusion that his termination was done in violation of Rule IX, Section 2 of the personnel rules and plaintiff did not offer any facts to support his conclusory allegations.

¶ 37    Moreover, plaintiff's claim that his termination was in violation of the City's personnel rules is contradicted by the record. In their motion to dismiss plaintiff's amended complaint, defendants attached two documents prepared by Johnson as the superintendent of police regarding plaintiff's termination. The first document indicated that it was "PERSONNEL ORDER No. 2018-049" and stated:

> "Probationary Police Officer, Brad Herbst, Employee # 120573, assigned to Unit 044, is hereby discharged from the Department of Police and from the services of the City of Chicago, effective close of business 15 November 2018.
>
> This action is taken in compliance with the Rule IX, Section 2, of the City of Chicago Personnel Rules and Regulations."

The personnel order listed Johnson and his title. It also included a notation of "Authenticated" with initials.

¶ 38    The second document was a letter prepared on Chicago Police Department letterhead, listing former Mayor Rahm Emanuel and Johnson as superintendent of police. The letter was addressed to Soo Choi, Commissioner, Department of Human Resources, dated 15 November 2018, and was signed by Johnson as Superintendent of Police. The letter stated:

> "Probationary Police Officer Brad Herbst, Employee #120573, was appointed to the Chicago Police Department on 16 May 2017. Probationary Police Officer Herbst
>
> [redacted section] [3]
>
> Probationary Police Officer Herbst will be separated from the employ of the Department of Police pursuant to Rule IX, Section 2 of the Personnel Rules of

---

[3] There is no indication in the record what was stated in the redacted portion of Johnson's letter.

the City of Chicago. This action will be effective at the close of business on 15
November 2018."

¶ 39    These documents directly refute plaintiff's claim that he was not terminated by Johnson as the superintendent of police and that City's department of human resources was not notified. Since plaintiff failed to allege any specific facts to support his claim and the record refutes his conclusory allegations, the trial court did not err in dismissing this count with prejudice. Since we have found that plaintiff cannot state a cause of action for *mandamus* relief on these grounds, we need not consider whether his claim was barred by the doctrine of *laches*.

¶ 40    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 41    Affirmed.