2023 IL App (1st) 221330-U

No. 1-22-1330

Order filed July 27, 2023

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PENROD PREMIUM CONSIGNMENT CIGARS LTD., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CH 433 |
| | ) | |
| THE CITY OF CHICAGO, and MAURICE COX, in His | ) | |
| Official Capacity as Commissioner of the City of Chicago | ) | |
| Department of Planning and Development, Historical | ) | |
| Preservation Division, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendants-Appellees. | ) | Judge, presiding. |

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where plaintiff sued a municipality based on the placement of a screen wall built on the roof of a privately owned building in a landmark district, the circuit court correctly dismissed plaintiff's complaint for declaratory and mandamus relief because plaintiff failed to exhaust its administrative remedies, lacked standing, and had no clear right to the relief sought.

¶ 2     The circuit court dismissed with prejudice the complaint of plaintiff, Penrod Premium Consignment Cigars Ltd. (Penrod), that sought declaratory and mandamus relief against defendants, the City of Chicago and Maurice Cox as Commissioner of the City of Chicago Department of Planning and Development (collectively, the City), based on the placement of a screen wall that was built on the roof of a privately owned landmark building near Penrod's office.

¶ 3     On appeal, Penrod argues that it had standing to assert its claims and sufficiently pled claims alleging violations of the building permit process and Penrod's right to mandamus relief. Penrod also argues that the trial court erred by denying its motion to amend its complaint.

¶ 4     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6     According to the well-pled allegations in the record, Penrod, a wholesale cigar distributor, is located at 600 South Dearborn Street, in the Printer's Row landmark district. In January 2020, a building in the 600 block of South Federal Street (the South Federal building), also located in the Printer's Row landmark district, applied for a permit from the City's Department of Buildings to install a screen wall around rooftop cooling equipment. When the Department of Buildings receives a permit application for a landmark building, it forwards the application to the commission on Chicago landmarks (the Commission) for review. Municipal Code of Chicago, Ill. § 2-120-740 (2023).

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 7    On June 4, 2020, the Commission, through its permit review committee, recommended approval of the screen wall permit subject to certain conditions regarding the height and color of the screen wall. On June 23, 2020, the Department of Buildings issued the permit. In a letter dated July 16, 2020, the Commission notified the owner of the South Federal building that the screen wall permit was conditionally approved, and that the Commission found that the project would meet the criteria in the Commission's rules and regulations and other applicable guidelines and standards. After the project began, Penrod lodged complaints with the City's nonemergency services telephone number and the commissioner of the City's department of planning and development (DPD) about the screen wall, but Penrod was not satisfied with the responses.

¶ 8    On January 28, 2021, Penrod filed a complaint for declaratory and mandamus relief against the City. In the declaratory judgment count, Penrod sought to void the Commission's approval of the permit application for the screen wall. According to Penrod, the Commission abused its discretion when it determined that the screen wall would not adversely affect a significant feature of a landmark building. In the mandamus counts, Penrod sought to compel (1) the Commission to convene a hearing for public comment before its "final approval" of the screen wall, (2) the Department of Buildings (which is not a defendant in this lawsuit) to revoke the permit for the screen wall because the permit was issued without final approval from the Commission, and (3) the Department of Buildings to enforce a permit certification signed by the building owner, Digital Realty Trust, Inc. (which is not a defendant in this lawsuit), to tear down any construction that exceeded what the Commission had approved and the Department of Buildings had permitted.

¶ 9      The City moved to dismiss the complaint under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 West 2020)), asserting in part that Penrod did not have standing because it had no legally cognizable stake in the permitting process for the South Federal building. The City also argued that Penrod failed to exhaust its administrative remedies, in part because it should have appealed the issuance of the permit to the City's building board of appeals (BBA). Further, the City asserted that Penrod was not entitled to a writ of mandamus because the Municipal Code did not require the Commission to hold a public hearing for the screen wall permit application, and Penrod's own allegations showed that the Commission followed the law. Attached to the City's motion were the written minutes of the June 4, 2020 meeting, which indicated that the permit review committee unanimously approved the screen wall.

¶ 10      In response, Penrod asserted in part that the full Commission did not approve the permit application and did not issue a written approval. Penrod attached an e-mail exchange with the Department of Buildings regarding a request under the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)) from Penrod's counsel for a copy of the permit as approved for the South Federal building. In the FOIA request, Penrod's counsel stated that the permit "should include a letter from the [D]epartment of Landmarks." The Department of Buildings responded that it "did not see a letter from Landmarks with the permit."

¶ 11      On June 9, 2022, the circuit court granted the City's motion to dismiss. The court ruled that (1) the court did not have subject matter jurisdiction over Penrod's complaint because Penrod did not seek administrative remedies and file a complaint for judicial review within 35 days from the date the administrative decision was served on the party affected, (2) Penrod did not have standing

because it did not establish a personal claim or right in the proceedings, and (3) regarding the mandamus counts, there was no clear right to relief and no clear duty for the City to act as Penrod requested.

¶ 12    Penrod moved the court to reconsider its decision. Penrod also sought leave to amend its complaint to add the Department of Buildings as a defendant. The circuit court denied both motions, and Penrod timely appealed.

¶ 13                                    II. ANALYSIS

¶ 14    The circuit court dismissed Penrod's complaint under sections 2-619 and 2-615 of the Code. Section 2-619(a)(9) permits dismissal of a claim when it is barred by "other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). "Affirmative matter" means "a type of defense that either negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 570 (2002). Lack of standing and failure to exhaust administrative remedies are both affirmative matters that are grounds for dismissal. *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 90 (2004); *Northern Trust Co. v. County of Lake*, 353 Ill. App. 3d 268, 277 (2004).

¶ 15    A motion to dismiss under section 2-615 challenges a complaint's legal sufficiency based on defects on the face of the complaint. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 18. The question "is whether, taking all well-pleaded facts as true and considering them in the light most favorable to the plaintiff, the plaintiff has alleged sufficient facts which, if proved, would

entitle the plaintiff to relief." *Jackson v. Michael Reese Hospital & Medical Center*, 294 Ill. App. 3d 1, 9-10 (1997). Dismissal is proper if there is no set of facts that can be proved that would entitle the plaintiff to recover. *Signapori v. Jagaria*, 2017 IL App (1st) 160937, ¶ 16.

¶ 16    Dismissals under sections 2-619 and 2-615 of the Code are reviewed *de novo. Id*.; *Goral v. Dart*, 2020 IL 125085, ¶ 27. The appellate court may affirm the judgment on any basis in the record. *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25.

¶ 17                                        A. Permit Review Process

¶ 18    A discussion of the City's permit review process is necessary for an understanding of the issues on review. When the Department of Buildings receives a permit application for a landmark building, it forwards the application to the Commission for review. Municipal Code of Chicago, Ill. § 2-120-740 (2023). The Commission must approve in writing any permit for alteration, construction, erection, or other work that takes place on a landmark building. *Id*. Within 15 days of receiving a permit application, the Commission must "issue in writing a preliminary decision approving or disapproving the application" and "notify the applicant and the appropriate city department of its preliminary decision." *Id*. § 2-120-760.

¶ 19    The Commission's review process takes one of two tracks. The first track occurs if the Commission, or the permit review committee acting on its behalf, preliminarily approves the permit, which occurs if the Commission "finds that the proposed work will not adversely affect any significant historical or architectural feature of the improvement or of the district, and is in accord with the Standards for Rehabilitation set forth by the United States Secretary of the Interior." *Id.* § 2-120-770.3. There is no hearing, but the City alleges that members of the public

may offer verbal or written statements at meetings of the permit review committee. After a preliminary approval, the permit application is returned to the Department of Buildings, which reviews the application and issues the permit accordingly. *Id.* §§ 2-120-770, 14A-1-104.2, 14A-4-401.3.

¶ 20 Appeals under the first track proceed as follows. The BBA hears appeals from decisions and determinations of the commissioner of buildings or his designee "relating to the issuance of a permit or work done under a permit." *Id.* §§ 14A-1-103.2, 14A-10-1005.l. The BBA is authorized to affirm, reverse, or modify a permit-related decision or determination. *Id.* § 14A-10-1005.l.l.

"Any person who is desiring review of a decision or determination of the building official[2] pertaining to a permit or permit application must file a written appeal petition, on a form to be provided, with the chair of the [BBA], within 21 days after the decision or determination to be reviewed has been issued by the building official. The appeal petition must be accompanied by all supporting information the petitioner wishes to be considered by the [BBA]. The petitioner must also deliver a copy of the appeal petition and supporting information to the building official and, if the petitioner is not the permit applicant, to the permit applicant. Petitions must be delivered in person or by U.S. Mail with delivery confirmation." *Id*. § 14A-10-1005.4.

"The building official may allow an untimely appeal petition to be considered by the [BBA]. In such case, the [BBA] will have full jurisdiction to hear and decide the matter." *Id.* § 14A-10-

_____

[2] The term "building official" means "the Commissioner of Buildings or the Commissioner's authorized representative.

1005.4.2. "A copy of all orders, decisions, or determinations of the [BBA] must be mailed to the petitioner, the permit applicant, and the building official." *Id.* § 14A-10-1005.8. "All decisions and findings of the [BBA] *** will, in all instances, be the final administrative determination and will be subject to review by a court as by law, may be provided." *Id.* § 14A-10- 1005.10.

¶ 21 The second track occurs if the Commission preliminarily disapproves the permit. If the Commission "finds that the proposed work will adversely affect or destroy any significant historical or architectural feature of the improvement or the district," or does not comply with the standards established by the Secretary of the Interior (*id.* § 2-120-780), the permit applicant may request an informal conference (*id.* § 2-120-790), and if that does not resolve the matter, then the Commission holds a public hearing on the permit application (*id.* § 2-120-800). Among others, any person, organization, or legal entity within 500 feet of the landmark building or within the landmark district may become a party to the public hearing. *Id.* § 2-120-680. Penrod refers to this status as a "party by request." After the hearing, the Commission issues in writing a final administrative decision approving or disapproving the permit application, and its decision may be appealed to the Circuit Court of Cook County under the Administrative Review Law. *Id.* §§ 2-120-800, 2-120-810.

¶ 22 Here, Penrod had no right to a hearing as a party by request because the Commission proceeded according to the first track, where it preliminarily approved the permit at the permit review committee meeting on June 4, 2020. The Municipal Code makes plain that a person or entity in Penrod's position has no right to be a party to a permit application proceeding unless the

Commission preliminarily disapproves the permit application and the matter proceeds to a public hearing. That did not happen here.

¶ 23                    B. Exhaustion of Administrative Remedies

¶ 24    First, we address the City's argument that the court lacks jurisdiction to consider any of Penrod's claims based on the decision of the Department of Buildings to issue the permit, which Penrod complains was done without the requisite written approval from the Commission. The City argues that any claim based on the decision of the Department of Buildings fails because Penrod did not exhaust its administrative remedies before it filed a complaint in the circuit court.

¶ 25    A party aggrieved by an administrative decision must first pursue all available administrative remedies before seeking judicial review. *Midland Hotel Corp. v. Director of Employment Security*, 282 Ill. App. 3d 312, 319 (1996). The exhaustion requirement allows the administrative agency to use its expertise, fully develop and consider the facts of the case, and grant relief to the aggrieved party, making judicial review unnecessary. *Canel v. Topinka*, 212 Ill. 2d 311, 320-21 (2004). When an agency has made a final decision, courts may review the decision through statutory or common law procedures. *Dubin v. Personnel Board*, 128 Ill. 2d 490, 497 (1989). The exhaustion requirement applies when an agency has exclusive jurisdiction over an action. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 935 (2004).

¶ 26    As discussed above, the permit application at issue here proceeded under the first track, where the Commission issued a preliminary approval of the application and sent it back to the Department of Buildings to conduct its own review of the application. Then, on June 23, 2020, the

Department of Buildings issued the permit for the screen wall. If Penrod believed that the Department of Buildings improperly issued the permit, then Penrod had to bring that matter to the BBA before filing a complaint in the circuit court. See Municipal Code of Chicago, Ill. § 14A-10-1005.4 (2023). Although Penrod was required to file that written appeal petition with the BBA within 21 days after the Department of Buildings issued the permit, the commissioner of buildings or his authorized representative may allow an untimely appeal petition to be considered by the BBA. See *id*.

¶ 27   The BBA had exclusive jurisdiction to address Penrod's claim that the Department of Buildings issued the permit for the screen wall without first receiving the Commission's approval in writing. The BBA hears appeals from decisions and determinations of the commissioner of buildings or his designee "relating to the issuance of a permit or work done under a permit." *Id*. §§ 14A-10-1005.l; 14A-1-103.2. The BBA is authorized to affirm, reverse, or modify a permit-related decision or determination. *Id*. § 14A-10-1005.l.l. And, as explained above, anyone who seeks review of a permit-related decision must file a written appeal with the BBA. *Id*. § 14A-10-1005.4. Penrod's claim that the Department of Buildings issued the permit without first receiving the Commission's approval in writing falls within the BBA's ambit. Because Penrod did not exhaust its administrative remedies, Penrod's claims based on the Department of Building's issuance of the permit were correctly dismissed.

¶ 28                                    C. Standing

¶ 29   Penrod argues that the circuit court erroneously dismissed the complaint due to lack of standing because Penrod's claim of an improperly denied hearing was a legally cognizable interest.

Specifically, Penrod alleges that, as a property owner within 500 feet of the South Federal building, Penrod would have qualified as a party by request and therefore been entitled to a Commission hearing if the City had not abused its discretion by recommending preliminary approval of the rooftop screen wall. Penrod argues that it has a procedural right and standing to see that the landmark laws governing the Printer's Row landmark district are properly executed. According to Penrod, the Printer's Row landmark district is a publicly owned facility because it has streets, bike paths, sidewalks and parks. Penrod asserts that its taxes in part contribute to defray the City's costs of free permit processing, so Penrod has standing as a taxpayer to bring suit, even in the absence of a statute, to enforce the equitable interest in public property, of which Penrod claims is being illegally disposed. Penrod asserts that the City's preliminary approval recommendation of the alteration of the roofline along Federal Street directly injured Penrod's property by reducing the amount of light and air that reached the street.

¶ 30    Standing requires "some injury in fact to a legally cognizable interest." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 492 (1988). The claimed injury must be distinct and palpable, fairly traceable to the defendant's actions, and substantially likely to be prevented or redressed by the grant of the requested relief. *Id.* at 492-93. A distinct and palpable injury refers to an injury that cannot be characterized as "a generalized grievance common to all members of the public." *Id.* at 494. Illinois law on the issue of standing is more liberal than federal law, and "State courts are generally more willing than Federal courts to recognize standing on the part of any plaintiff who shows that he is in fact aggrieved by an administrative decision." *Id.* at 491.

¶ 31 For a declaratory judgment action, "there must be an actual controversy between adverse parties, with the party requesting the declaration possessing some personal claim, status, or right which is capable of being affected by the grant of such relief." *Greer*, 122 Ill. 2d at 493. Similarly, a plaintiff seeking a writ of mandamus must establish a " 'sufficiently protectable interest pursuant to statute or common law which is alleged to be injured.' " *Cedarhurst of Bethalto Real Estate, LLC v. Village of Bethalto*, 2018 IL App (5th) 170309, ¶ 31 (quoting *Hill v. Butler*, 107 Ill. App. 3d 721, 725 (1982)).

¶ 32 "[A] prospective party cannot gain standing merely through a self-proclaimed concern about an issue, no matter how sincere." *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164, 175 (1988). Furthermore, where the prospective party is neither the owner of the private property in question nor even an owner of adjoining property, aesthetic interests, like the ability to view a private property from a public street, "while not to be disregarded, are not controlling on the question of standing." *Id*. (two organizations concerned with landmarks and architecture did not have a legally cognizable stake in the City's decision to rescind a privately owned building's landmark designation where the two organizations did not own the building or an adjoining property). In addition, Illinois courts do not "recognize as a basis for standing an alleged right to participate in a public hearing for participation's sake *** where *** a municipality has bestowed that alleged procedural right apparently not as a legal entitlement but as a tool to assist the municipality in performing its legislative function." *Id.*

¶ 33 None of Penrod's claimed injuries supports standing. Penrod alleged that it was denied a hearing on the permit at which it could have participated as a "party by request." But Penrod had

no right to a hearing based on that status under the Commission's permit review process. As discussed above, the Commission's review process followed the first track, where the Commission's permit review committee preliminarily approved the permit because the Commission found "that the proposed work will not adversely affect any significant historical or architectural feature of the improvement or of the district, and is in accord with the Standards for Rehabilitation set forth by the United States Secretary of the Interior." Municipal Code of Chicago, Ill. § 2-120-770 (2023). Consequently, no hearing was held.

¶ 34    The Municipal Code makes plain that a person or entity in Penrod's position has no right to be a party to a permit application proceeding unless the Commission preliminarily disapproves the permit application and the matter proceeds to a public hearing. That did not happen here. Therefore, as a matter of law, Penrod could not have been injured by any denial of a hearing as a party by request. And without a legally cognizable injury, Penrod lacks standing. In the end, Penrod seeks "to participate in a public hearing for participation's sake," which is not a basis for standing. *Landmarks Preservation Council of Illinois*, 125 Ill. 2d at 175.

¶ 35    Besides its claimed inability to participate in a hearing that was not legally required to occur, Penrod alleges no injury to itself. Instead, the thrust of its complaint is that the Commission ignored the guidelines that apply to landmark buildings. This amounts to an objection to the screen wall's appearance, which does not provide standing. In its complaint, Penrod alleged that the Commission ignored the provision that additions to roofs that change characteristic roof shapes and lines will not be approved. Penrod also asserted that the materials used to construct the screen wall conflicted with the masonry exterior of the other buildings in the landmark district. Penrod

further contended that the screen wall improperly acted as "a sign board visible from the public way."

¶ 36    The Illinois Supreme Court has squarely rejected appearance-based concerns as a basis for standing. In *Landmarks Preservation Council of Illinois*, the court held that two organizations concerned with landmarks and architecture did not have standing to challenge the City's decision to rescind a building's landmark designation. The organizations' "only interest appear[ed] to be the ability to view this private property from a public street." 125 Ill. 2d at 175. The organizations' aesthetic interests were "not controlling on the question of standing." *Id*. The organizations did not own the subject building or an adjoining building. *Id*. Like the organizations in *Landmarks Preservation Council*, Penrod's only interest is that a building in its vicinity has installed a screen wall that Penrod does not like. Penrod does not own the building in question or any adjoining building. Penrod's lawsuit amounts to nothing more than a private entity's objection to the appearance of a privately-owned building. It is not situated any differently, for standing purposes, than any other occupant of a building in the vicinity. Penrod does not have a legally cognizable interest at stake.

¶ 37    Penrod's remaining contentions—that the landmark district is a publicly owned facility and has streets, bike paths, sidewalks, and a park; the permit process is publicly funded, and Penrod has an interest in seeing that laws are followed—also do not supply standing. These are not distinct and palpable injuries, but generalized grievances that are common to all members of the public. *Alliance for the Great Lakes v. Department of Natural Resources*, 2020 IL App (1st) 182587, ¶ 32 (distinct and palpable injuries are those that cannot be characterized as generalized grievances

common to all members of the public). Streets, bike paths, sidewalks, and parks are not unique to the Printer's Row landmark district. And all landmark-related permits go through the same process. Penrod occupies no different position than any other person or entity that objects to the appearance of a nearby building, so Penrod does not have standing.

¶ 38    Penrod's reliance on *Martini v. Netsch*, 272 Ill. App. 3d 693 (1995), does not advance its position. There, the plaintiff had standing to "[seek] relief from the alleged misuse of tax revenue to fund elective abortions at Cook County Hospital." *Id.* at 696. The court stated that, as a taxpayer, the plaintiff had the right to enforce her equitable interest in public resources allegedly being used for an illegal purpose at a public facility. *Id.* Here, however, no public funds were misused for an illegal purpose. Again, the South Federal building is privately-owned, and no public resources were used to erect the screen wall. The Commission's only role was to perform its lawful, ordinance-mandated review of a permit for whether the screen wall was appropriate under the City's requirements for landmark districts. Any use of public funds for that purpose was lawful and, therefore, not misappropriated for an illegal purpose. Further, although Penrod disagrees with how the Commission weighed the relevant guidelines, there is no indication that anything improper occurred. Penrod did not suffer a distinct and palpable injury and does not have standing to assert any of its claims.

¶ 39    We conclude that the circuit court did not err when it ruled that Penrod lacked standing. Penrod has an office in the vicinity of the South Federal building and is complaining about the process between the South Federal Building and the City that resulted in a permit for a screen wall

that Penrod evidently dislikes. Penrod has no personal legal interest or right in that process, and no cognizable injury.

¶ 40                                              D. Mandamus Relief

¶ 41    Penrod also failed to state a claim for mandamus relief. The mandamus counts in Penrod's complaint sought to compel (1) the Commission to convene a hearing for public comment before finally approving or disapproving the screen wall, (2) the Department of Buildings to revoke the permit for the screen wall because there was no final approval from the Commission, and (3) the Department of Buildings to enforce the permit certification signed by the owner of the South Federal building that it would tear down any construction that exceeded what was approved by the Commission and permitted by the Department. None of the counts meet the requirements for a writ of mandamus.

¶ 42    Mandamus is an extreme remedy that is used to enforce, " 'as a matter of right, a public officer's performance of his *** official duties where no exercise of discretion on the officer's part is involved.' " *Ryan v. City of Chicago*, 2019 IL App (1st) 181777, ¶ 12 (quoting *Perkins v. Quinn*, 2012 IL App (1st) 113165, ¶ 18). No rights can be acquired in a mandamus proceeding, since the purpose of a mandamus proceeding is to enforce rights that are already vested. *Kramer v. City of Chicago*, 58 Ill. App. 3d 592, 598 (1978). The three necessary elements for mandamus relief are (1) a clear, affirmative right to relief, (2) a clear duty of the public official to act, and (3) a clear authority in the public official to comply with the writ. *Ryan*, 2019 IL App (1st) 181777, ¶ 13. The plaintiff has the burden to establish every material fact necessary to show the plain duty of the defendant. *Illinois Wood Energy Partners, L.P. v. County of Cook*, 281 Ill. App. 3d 841, 852

(1995). "Mandamus is never awarded in a doubtful case." *Kramer*, 58 Ill. App. 3d at 599. Further, though mandamus can compel the exercise of a public official's discretion (*Burnidge Brothers Almora Heights, Inc. v. Wiese*, 142 Ill. App. 3d 486, 490 (1986)), mandamus cannot be used to direct a public official to reach a particular decision or exercise his discretion in a particular way, even if the judgment or discretion was erroneously exercised (*Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 25).

¶ 43    Regarding the first mandamus count, Penrod had no right to a Commission hearing. As explained above, the Commission is required to hold a public hearing only if it preliminarily disapproves a permit application. Municipal Code of Chicago, Ill. § 2-120-800 (2023). Here, the Commission preliminarily approved the screen wall permit, so no hearing was required. Moreover, the decision to preliminarily approve or disapprove a permit application is a discretionary one. The Commission applies its discretion to assess a variety of factors, determining whether the proposed work would adversely affect significant or architectural features and is consistent with certain federal standards. *Id.* § 2-120-770. The Commission applied its discretion in this case, and Penrod's dissatisfaction with the outcome of the Commission's discretionary process is not a basis for mandamus relief. Penrod's mandamus count against the Commission was properly dismissed.

¶ 44    Penrod's next count for mandamus relief sought to compel the Department of Buildings to revoke the permit for the screen wall because the Commission did not issue a "final approval." In its complaint, Penrod stated that after eliciting public comments on a permit application, the Commission must review the application for adverse effects and make what it calls a "final determination." Penrod appears to refer to the process that occurs after a preliminary disapproval,

which can include a hearing. See *id*. § 2-120-800. Again, no hearing was required here, where there was a preliminary approval.

¶ 45    If Penrod is asserting that the permit must be revoked because the Commission did not issue the required written approval, Penrod also has no right to relief. The Municipal Code does not mandate a particular format for written approval. In the circuit court, Penrod posited that the Commission was supposed to transmit a letter to the Department of Buildings. But Penrod identifies no source of a clear right to a letter. And here, the preliminary approval was reflected in the written minutes of the permit review committee meeting where the screen wall was considered. Mandamus relief against the Department was correctly denied.

¶ 46    Last, Penrod does not have a clear right to relief and the Department of Buildings does not have a clear duty to act to enforce the permit certification signed by the owner of the South Federal building and require the removal of the structure. The ordinance that describes permit certifications and the text of the permit certification itself make this clear. The ordinance states that a signatory to a permit certification statement "acknowledges the penalties that may attach" if the work exceeds the scope of the permit. *Id*. § 14A-4-401.3.4. Penalties are therefore a possibility, not a certainty. Thus, the certification signed for the screen wall permit states that if the work exceeds the scope of the permit,

> "I can and will be severely punished ***. I can have my permit revoked; be ordered to stop all work on the project; fined up to $5,000.00 per day; imprisoned for up to six months; required to do up to 100 hours of community service; required to tear down at my own expense all completed work; and, in addition to other penalties provided by law, required

to reimburse the City up to three times any damages incurred for providing any false or inaccurate information in this building permit application."

¶ 47 As an initial matter, Penrod did not even allege that the work on the screen wall exceeded the scope of the permit that was issued; rather, Penrod asserted only that the permit should not have been approved in the first place. Regardless, nothing in the ordinance guarantees that an owner will be required to remove noncompliant construction. And mandamus cannot be ordered when it "depends upon the cooperation or approval of a third person who is not before the court." *Wiese*, 142 Ill. App. 3d at 490-91. The building owner, Digital Realty Trust, Inc., is not a party to this lawsuit. Penrod does not have a clear right to relief, and it identifies no clear duty for the City to act. The circuit court correctly dismissed the mandamus counts on this basis as well.

¶ 48                                  E. Leave to Amend the Complaint

¶ 49 Penrod argues that the circuit court should have allowed it to amend its complaint to add the Department of Buildings as a party.

¶ 50 The circuit court's ruling on an amendment to a pleading is reviewed for an abuse of discretion. *In re Marriage of D.T.W. & S.L.W.*, 2011 IL App (1st) 111225, ¶ 107. Ordinarily, a court applies a multi-factor analysis to determine whether to allow leave to amend a complaint, but a court "may begin and end [its] analysis with the observation that it is never an abuse of discretion to deny leave to amend when the proposed amendment would be futile." *Malacina v. Cook County Sheriffs Merit Board*, 2021 IL App (1st) 191893, ¶ 40. Allowing Penrod to add the Department of Buildings as a defendant would have not changed the court's ruling that dismissed

Penrod's complaint because Penrod failed to exhaust its administrative remedies, lacked standing, and failed to state a claim for mandamus. The circuit court properly denied leave to amend.

¶ 51                              III. CONCLUSION

¶ 52    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 53    Affirmed.